IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| ASSOCIATION OF EQUIPMENT MANUFACTURERS, | ) ) ) |
| AGCO CORPORATION, | ) ) |
| CNH INDUSTRIAL AMERICA LLC, | ) ) |
| DEERE & COMPANY, and | ) ) |
| KUBOTA TRACTOR CORPORATION, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| THE HON. DOUG BURGUM, Governor of the State of North Dakota, in his Official Capacity, and | ) ) ) ) |
| THE HON. WAYNE STENEHJEM, Attorney General of the State of North Dakota, in his Official Capacity, | ) ) ) ) |
| Defendants. | ) ) ) |

## AFFIDAVIT OF JAMES E. WALKER

| | |
|---|---|
| STATE OF WISCONSIN | ) |
| | ) ss: |
| COUNTY OF RACINE | ) |

James E. Walker, having been first duly sworn, deposes and says as follows:

1. I am the Vice President, Case IH NAFTA of plaintiff CNH Industrial America LLC ("CNH"). I am also the Treasurer and a member of the Board of Directors of plaintiff Association of Equipment Manufacturers ("AEM"), of which I was formerly the AG Chair.

1

4838-7509-7420.6

2.      I am competent to testify. I make this Affidavit, based on personal knowledge and certain business records of CNH and its affiliates, to advise the Court of certain facts relevant to the motion for preliminary injunction filed by the plaintiffs seeking to enjoin enforcement of recently enacted amendments to the North Dakota Farm Equipment Dealership Statute known as "Senate Bill 2289."

3.      Unless its enforcement is enjoined by this Court, Senate Bill 2289 will cause a number of hindrances and disruptions to CNH's operations in North Dakota and elsewhere. Although the initial impact of Senate Bill 2289 will be on CNH's contractual relationships with farm equipment dealers in North Dakota, the statute will also have adverse effects on consumers seeking to purchase farm equipment; dealers that seek to comply with the appearance, service, and other performance standards that CNH expects of dealers licensed to use its federally registered trademarks; and on CNH's trademarks themselves.

4.      CNH is the successor to two farm equipment manufacturers, Case Corporation and New Holland N.V., which merged in 1999. The brands of farm equipment that CNH sells in the United States include brands of these two predecessors, "Case IH" (the "IH" stands for "International Harvester") and "New Holland."

5.      The thirty-three contracts that CNH and its affiliates currently have in place with farm equipment dealers in North Dakota are among the "Existing Dealership Agreements" referenced in the Complaint. These contracts include dealership agreements for both the "Case IH" and "New Holland" families of brands.

6.      Insofar as it relates to CNH, the "Fed. R. Evid. 1006 Summary of Manufacturers' Existing Dealership Agreements Impaired by Senate Bill 2289" attached as Exhibit F to the

2

Complaint correctly identifies the Existing Dealership Agreements that CNH believes will be impaired, outlawed, or rendered unenforceable by Senate Bill 2289.

7. For example, CNH currently has a "Case IH Agricultural Equipment Sales and Service Agreement" (the "Case IH Agreement") in place with Northern Plains Equipment Co. Inc. ("Northern Plains"), a dealer with locations in each of Minot, Garrison, and Mandan, North Dakota. For purposes of the Case IH Agreement, CNH is defined as "Case IH." The Case IH Agreement is based on a standard template used for many Case IH and New Holland farm equipment dealers in North Dakota and around the country.

8. Similarly, CNH currently has a "New Holland Equipment Sales and Service Agreement" (the "New Holland Agreement") in place with Park River Implement L.L.C. ("Park River Implement"), a dealer located in Park River, North Dakota. For purposes of the New Holland Agreement, CNH is defined as "New Holland." The New Holland Agreement is based on a very similar standard template as the Case IH Agreement, which is used for many Case IH and New Holland farm equipment dealers in North Dakota and around the country.

9. For purposes of this Affidavit, I will refer to the Case IH Agreement and the New Holland Agreement together as the "Agreements."

10. Among many other provisions, the Agreements include provisions giving CNH the right to audit the dealers' past warranty claims. For example, Section 16.5 of the Case IH Agreement provides that "Dealer shall maintain for at least two (2) years all original records and documents relating to Dealer Claims submitted to or paid by Case IH." Similarly, Section 16.5 of the New Holland Agreement provides that "Dealer shall maintain for at least two (2) years all original records and documents relating to Dealer Claims submitted to or paid by New Holland."

A substantively identical provision is included in many of CNH's agricultural dealer agreements in North Dakota and around the country.

11. Section 16.6 of the Case IH Agreement provides:

> Dealer's submission of unsubstantiated Dealer Claims or Dealer Claims not in compliance with the requirements of the DOG [Dealer Operating Guide] will result in a chargeback to Dealer for such claims, including interest at the then current prime rate. If Dealer refuses to permit an audit, fails to maintain a substantial amount of the required records, or intentionally submits false or fraudulent Dealer Claims, the chargeback will include all amounts paid on Dealer Claims for the prior two (2) years, including any dealer settlement allowances, plus interest at the then current prime rate. This remedy is in addition to those available to Case IH for breach of this Agreement, including but not limited to termination of this Agreement.

Similarly, Section 16.6 of the New Holland Agreement provides:

> Dealer's submission of unsubstantiated Dealer Claims or Dealer Claims not in compliance with the requirements of the DPM [Dealer Policy Manual] will result in a chargeback to Dealer for such claims, including interest at the then current prime rate. If Dealer refuses to permit an audit, fails to maintain a substantial amount of the required records, or intentionally submits false or fraudulent Dealer Claims, the chargeback will include all amounts paid on Dealer Claims for the prior two (2) years, including any dealer settlement allowances, plus interest at the then current prime rate. This remedy is in addition to those available to New Holland for breach of this Agreement, including but not limited to termination of this Agreement.

A substantively identical provision is included in many of CNH's agricultural dealer agreements in North Dakota and around the country.

12. In the farm equipment industry, a "chargeback" is a practice whereby a monetary credit that a manufacturer had provisionally granted to the dealer for a warranty claim is deducted based on some defect in the claim.

13. Sections 16.5 and 16.6 of the Agreements are important contractual provisions for CNH because they protect CNH's ability to detect and deter any instances of fraudulent warranty claims by the dealer. In the farm equipment industry, warranty fraud—where a dealer submits false or inflated warranty claims to collect reimbursement from the manufacturer for services

4

that were never rendered—is the functional equivalent of insurance fraud. Warranty fraud is a significant business concern for CNH, both because it costs CNH money and because it can be very difficult to detect. In an effort to detect and deter warranty fraud, CNH therefore conducts audits of its dealers' warranty claims from time to time. These audits typically involve a review of a dealer's warranty claims documentation over the preceding two years.

14. My understanding is that Senate Bill 2289 will outlaw or render unenforceable certain terms in Sections 16.5 and 16.6 of the Agreements. For example, my understanding is that Senate Bill 2289 will forbid CNH from conducting a warranty audit or seeking a warranty chargeback after one year has passed from the date of the warranty payment. Senate Bill 2289 therefore will cut the time that CNH has for conducting an audit or imposing a chargeback on the dealer in half, from two years to one year. It is my understanding that substantively identical terms with other dealers across the State of North Dakota will also be outlawed or rendered unenforceable, unless this Court grants an injunction.

15. Separately, Senate Bill 2289 also has significant implications for CNH's rights and business practices with respect to trademarks.

16. Section 24.8 and Schedule B of the Case IH Agreement give Northern Plains "a nonexclusive right and license to use" three trademarks owned by CNH and its affiliates: "Case IH," "Case Construction," and "CNH Industrial Parts." Likewise, Section 24.8 and Schedule B of the New Holland Agreement give Park River Implement "a nonexclusive right and license to use" three trademarks owned by CNH and its affiliates: "New Holland," "New Holland Construction," and "CNH Parts." For purposes of the Agreements, the respective trademarks are defined as the "Licensed Trademarks."

17. CNH owns multiple federal registrations for the "Case IH" and "New Holland" trademark, among others. Examples of the "Case IH" trademark include USPTO Trademark Registration Nos. 1,599,145, 2,036,566 and 2,156,786. Examples of the "New Holland" trademark include USPTO Trademark Registration Nos. 623,834; 642,298; 646,749; 889,234; and 890,857.

18. The licenses that the Agreements give to Northern Plains and Park River Implement to use the Licensed Trademarks require compliance with the standards that CNH seeks to have associated with any display of its trademarks at a dealership location. For example, Section 8.3 of the Case IH Agreement provides:

> At any Dealer Location and in all advertising for such Dealer Locations, Dealer shall not use or display the Licensed Trademarks in any way that might cause confusion with, or dilute the distinctive quality of, the Licensed Trademarks, or in any way that violates any Case IH trademark guidelines. In furtherance of this provision, if Dealer represents non-Case IH products, Dealer shall at any such location: (a) maintain internal and external display areas for new Products separate from non-Case IH products; (b) display new Products in the most visible and desirable position and in an area of greater size or space than the area used to display non-Case IH products.

A substantively identical provision—substituting the term "New Holland" for "Case IH"—is included in the New Holland Agreement. Substantively identical provisions are included in many of CNH's agricultural dealer agreements in North Dakota and around the country.

19. Section 9.1(c) of the Agreements provides that "Dealer's use of Licensed Trademarks and its display of Products on Dealer's website shall be subject to Case IH's [or New Holland's] approval." A substantively identical provision is included in many of CNH's agricultural dealer agreements in North Dakota and around the country.

20. Section 24.1 of the Agreements provides that "[i]n the event Dealer's use of Licensed Trademarks (even though a Permitted Use) is unacceptable to Case IH [or New

6

Holland] in its sole discretion, Dealer must immediately cease such use of the Licensed Trademark upon notice from Case IH [or New Holland]." A substantively identical provision is included in many of CNH's agricultural dealer agreements in North Dakota and around the country.

21. My understanding is that Senate Bill 2289 will outlaw or render unenforceable many of these trademark-related terms in CNH's dealership agreement with Park River Implement. For example, my understanding is that Senate Bill 2289 will outlaw or render unenforceable the requirement in Section 8.3 of the Agreements that any non-CNH-related business that Northern Plains or Park River Implement may pursue must "maintain internal and external display areas for new Products separate from non-Case IH [or non-New Holland] products." It is my understanding that substantively identical trademark license terms with other dealers across the State of North Dakota will also be outlawed or rendered unenforceable, unless this Court grants an injunction.

22. It is also my understanding that Senate Bill 2289 will, in certain circumstances, outlaw or render unenforceable the requirement in Section 8.3 of the Agreements that the dealers "not use or display the Licensed Trademarks . . . in any way that violates any Case IH [or New Holland] trademark guidelines." It is my understanding that substantively identical trademark license terms with other dealers across the State of North Dakota will also be outlawed or rendered unenforceable, unless this Court grants an injunction.

23. Similarly, it is my understanding that Senate Bill 2289 will, in certain circumstances, outlaw or render unenforceable the requirement in Section 9.1(c) of the Agreements that "Dealer's use of Licensed Trademarks and its display of Products on Dealer's website shall be subject to Case IH's [or New Holland's] approval." It is my understanding that

7

substantively identical trademark license terms with other dealers across the State of North Dakota will also be outlawed or rendered unenforceable, unless this Court grants an injunction.

24. Finally, it is my understanding that Senate Bill 2289 will outlaw or render unenforceable the provision in Section 24.1 of the Agreements that "Dealer must immediately cease" any use of CNH's trademarks that is "unacceptable to Case IH [or New Holland] in its sole discretion." It is my understanding that substantively identical trademark license terms with other dealers across the State of North Dakota will also be outlawed or rendered unenforceable, unless this Court grants an injunction.

25. Section 24.7 of the Agreements provides that "Dealer acknowledges the Licensed Trademarks are exclusively owned by Case IH [or New Holland]. Dealer's use of the Licensed Trademarks pursuant to this Agreement does not give Dealer any ownership interest or other interest in or to the Licensed Trademarks." Section 24.7 also provides that "Any and all goodwill arising from Dealer's use of the Licensed Trademarks shall inure solely and exclusively to the benefit of Case IH [or New Holland]." A substantively identical provision is included in many of CNH's agricultural dealer agreements in North Dakota and around the country.

26. Finally, Section 24.3 of the Agreements provides in relevant part that "Dealer shall not . . . sublicense or assign its right to use the Licensed Trademarks to any other person or entity . . . ." A substantively identical provision is included in many of CNH's agricultural dealer agreements in North Dakota and around the country.

27. My understanding is that Senate Bill 2289 will outlaw or render unenforceable the prohibition of trademark license assignments in Section 24.3(b) of the Agreements. It is my understanding that substantively identical license terms with other dealers across the State of

North Dakota will also be outlawed or rendered unenforceable, unless this Court grants an injunction.

28. In addition to the harms described above, Senate Bill 2289 will cause CNH substantial business uncertainty by causing CNH either to follow aspects of a law that CNH genuinely believes to be improper or risk violating the law at its peril.

29. In my capacity as a member of the Board of Directors of AEM, I state based on personal knowledge that there are other members of AEM for which Senate Bill 2289 is likely to affect their existing dealership agreements, warranty agreements, and trademark rights in a similar manner as Senate Bill 2289 affects CNH.

FURTHER THE AFFIANT SAYETH NOT.

_____
James E. Walker

Subscribed and sworn to me before me this 24th day of July, 2017

_____
TRACY L. GLAMAN
Notary Public

My commission expires: April 19, 2020



9

4838-7509-7420.6