UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Association of Equipment Manufacturers, AGCO Corporation, CNH Industrial America, LLC, Deere & Company, and Kubota Tractor Corporation, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 1:17-cv-151 |
| The Hon. Doug Burgum, Governor of the State of North Dakota, in his Official Capacity, and The Hon. Wayne Stenehjem, Attorney General of the State of North Dakota, in his Official Capacity, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

......................................................................................................................

_____

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION
FOR A PRELIMINARY INJUNCTION**
_____

Wayne K. Stenehjem
State of North Dakota
Attorney General

By:  /s/ J.P. Bialke_____
J.P. Bialke
Assistant Attorney General
State Bar ID No. 04861
Office of Attorney General
500 North 9th Street
Bismarck, ND 58501-4509
Telephone (701) 328-3640
Facsimile (701) 328-4300
Email jbialke@nd.gov

By:  /s/ Nathan J. Svihovec_____
Nathan J. Svihovec
Assistant Attorney General
State Bar ID No. 08332
Office of Attorney General
500 North 9th Street
Bismarck, ND 58501-4509
Telephone (701) 328-3640
Facsimile (701) 328-4300
Email njsvihovec@nd.gov

Attorneys for Defendants.

# TABLE OF CONTENTS AND AUTHORITIES

**Page(s)**

Statement of Case ........................................................................................................... 1

Introduction ..................................................................................................................... 1

    U.S. Const. art. I, § 10 ............................................................................................. 1

    9 U.S.C. § 1 ............................................................................................................. 1

    15 U.S.C. § 1051 ..................................................................................................... 1

    U.S. Const. art. I, § 8 ............................................................................................... 1

    15 U.S.C. § 13 ......................................................................................................... 1

Statement of Facts .......................................................................................................... 2

    N.D.C.C. § 51-07-01.2 ............................................................................................ 2

    N.D.C.C. § 51-07-02.2 ............................................................................................ 2

    N.D.C.C. § 51-26-06 ............................................................................................... 2

    N.D.C.C. § 51-07-01 ............................................................................................... 2

    S.L. 1937 ch. 125 § 1 ............................................................................................. 2

    S.L. 1937 ch. 125 § 3 ............................................................................................. 2

    S.L. 1991 ch. 521 § 1 ............................................................................................. 2

    N.D.C.C. § 51-07-01.2.1 ......................................................................................... 2

    N.D.C.C. § 51-07-01.2.2 ......................................................................................... 2

    N.D.C.C. § 51-07-01.2.3 ......................................................................................... 2

    N.D.C.C. § 51-07-01.2.4 ......................................................................................... 2

    N.D.C.C. § 51-07-01.2.5 ......................................................................................... 2

    N.D.C.C. § 51-07-01.2 ........................................................................................ 2, 3

    N.D.C.C. § 51-26-06 ............................................................................................... 3

    *Novus Franchising, Inc. v. Dawson*,
        725 F.3rd 885 (8th Cir. 2013) ..................................................................... 3

Argument......................................................................................................................... 4

I.    Plaintiffs have failed to satisfy the prerequisites for obtaining
      the "extraordinary and drastic remedy" of preliminary
      injunctive relief, especially as asserted against the state ..................................... 4

      *Watkins, Inc. v. Lewis*,
             346 F.3d 841 (8th Cir. 2003) ..................................................................... 4

      *CDI Energy Services v. West River Pumps, Inc.*,
             567 F.3d 398 (8th Cir. 2009) ..................................................................... 4

      *Gelco Corp. v. Coniston Partners*,
             811 F.2d 414 (8th Cir. 1987) ..................................................................... 4

      *Frejlach v. Butler*,
             573 F.2d. 1026 (8th Cir. 1978) ................................................................... 4

      *Rizzo v. Goode*,
             423 U.S. 362 (1976) ............................................................................. 4, 5

      *Martin v. Metro. Atlanta Rapid Transit Auth.*,
             225 F. Supp. 2d 1362 (N.D. Ga. 2002) ................................................ 4, 5

      *Midgett v. Tri-County Metro. Dist. of Or.*,
             74 F. Supp. 2d 1008 (D. Or. 1999) ........................................................... 4

      *Fund for Animals v. Frizzell*,
             530 F.2d 982 (D.C. Cir. 1975) ................................................................... 4

      *Novus Franchising, Inc. v. Dawson*,
             725 F.3rd 885 (8th Cir. 2013) ................................................................... 4

      *United States Trust Co. of New York v. New Jersey*,
             431 U.S. 1 (1977) ..................................................................................... 5

      *City of El Paso v. Simmons*,
             379 U.S. 497 (1965) ................................................................................. 5

      *East N.Y. Sav. Bank v. Hahn*,
             326 U.S. 230 (1945) ................................................................................. 5

      *Brown v. Bd. of Trustees*,
             187 F.2d 20 (5th Cir. 1951) ...................................................................... 5

      *Vonage Holdings Corp. v. Nebraska Pub. Serv. Comm'n*,
             564 F.3d 900 (8th Cir. 2009) ................................................................... 5

      *Dataphase Sys., Inc. v. C L Systems, Inc.*,
             640 F.2d 109 (8th Cir. 1981) ................................................................... 5

      N.D.C.C. § 01-02-20 .......................................................................................... 6

      *Tooz v. State*,
             38 N.W.2d 599 (N.D. 1949) ..................................................................... 6

A.   There is no threat of irreparable harm to Plaintiffs ..................................... 6

    *Watkins, Inc. v. Lewis,*
       346 F.3d 841 (8th Cir. 2003) ............................................................ 6

    *Gelco Corp. v. Coniston Partners,*
       811 F.2d 414 (8th Cir. 1987) ............................................................ 6

    *Taxpayers' Choice Volunteer Comm. v. Roseau Cty.*
    *Bd. of Comm'rs,*
       903 F. Supp. 1301 (D. Minn. 1995) ................................................. 6

    *Allied Structural Steel v. Spannaus,*
       438 U.S. 234 (1978) .......................................................................... 7

    *Alliance of Auto. Mfrs. v. Gwadosky,*
       430 F.3d 30 (1st Cir. 2005) ............................................................. 7

    *Equip. Mfrs. Inst. v. Janklow,*
       300 F.3d 842 (8th Cir. 2002) ........................................................... 7

    *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.,*
       439 U.S. 96 (1978) ............................................................................ 7

B.   The harm to the State of North Dakota from enjoining
    its duty and obligation to protect its citizens outweighs
    any inconvenience to Plaintiffs ....................................................... 7

C.   Plaintiffs have not shown a likelihood of success on
    the merits ......................................................................................... 8

    *Equip. Mfrs. Inst. v. Janklow,*
       300 F.3d 842 (8th Cir. 2002) ........................................................... 8

    N.D.C.C. § 51-07-01.2 ...................................................................... 8

    N.D.C.C. § 51-26-06 ......................................................................... 8

    N.D.C.C. § 51-07-02.2 ...................................................................... 9

D.   The public interest would not be served by granting
    the requested injunctive relief ........................................................ 9

    *Burlington N. R.R. v. Nebraska,*
       802 F.2d 994 (8th Cir. 1986) ........................................................... 9

    *Energy Reserves Grp. Inc. v. Kan. Power & Light Co.,*
       459 U.S. 400 (1983) .......................................................................... 9

    *Educ. Employees Credit Union v. Mutual Guar. Corp.,*
       50 F.3d 1432 (8th Cir. 1995) ...................................................... 9, 10

*Minnesota Ass'n of Health Care Facilities, Inc. v. Minn. Dep't of Pub. Welfare*,
  742 F.2d 442 (8th Cir. 1984) ........................................................... 9

*McDonald v. Bd. of Election Comm'rs of Chicago*,
  394 U.S. 802 (1969) ........................................................................ 10

*Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*,
  896 F.2d 1283 ................................................................................. 10

*Rizzo v. Goode*,
  423 U.S. 362 (1976) ........................................................................ 11

*Stefanelli v. Minard*,
  342 U.S. 117 (1951) ........................................................................ 11

E.   The significant public purpose underpinning SB 2289 supports its constitutionality ....................................................... 11

*Allied Structural Steel v. Spannaus*,
  438 U.S. 234 (1978) ........................................................................ 11

*United States Trust Co. of New York v. New Jersey*,
  431 U.S. 1 (1977) ............................................................................ 11

*Honeywell, Inc. v. Minn. Life and Health Ins. Guar. Ass'n*,
  110 F.3d 547 (8th Cir. 1997) ........................................................... 11

*John Deere v. State*,
  130 A.3d 1197 (N.H. 2015) .............................................................. 12

*Keystone Bituminous Coal Assn. v. DeBenedictis*,
  480 U.S. 470 (1987) ........................................................................ 12

F.   SB 2289 advances an important and legitimate state interest ........................................................................................ 12

*Keystone Bituminous Coal Assn. v. DeBenedictis*,
  480 U.S. 470 (1987) ........................................................................ 13

*United States Tr. Co. v. New Jersey*,
  431 U.S. 1 (1977) ............................................................................ 13

*Buffalo Teachers Fed'n v. Tobe*,
  464 F.3d 362 (2d Cir. 2006) ............................................................ 13

*Assoc. of Surrogates & Supreme Court Reporters v. New York*,
  940 F.2d 766 (2d Cir. 1991) ............................................................ 13

iv

G.   Senate Bill 2289 does not violate the Federal Arbitration Act because the parties may mutually agree to arbitrate disputes .......................................................... 13

N.D.C.C. 51-07-01.2(1)(l)(5) ...................................................... 14

9 U.S.C. § 2 ............................................................................ 14

*DIRECTV, Inc. v. Imburgia,*
    136 S.Ct. 463 (2015) ........................................................... 14, 15

*H.R.Rep. No. 68-96* (1924) ...................................................... 14

*Allied-Bruce Terminix Cos. v. Dobson,*
    513 U.S. 265 (1995) ............................................................. 14

*AT&T Mobility LLC v. Concepcion,*
    563 U.S. 333 (2011) ............................................................. 15

*Hall Street Assoc., L.L.C. v. Mattel, Inc.,*
    552 U.S. 576 (2008) ............................................................. 15

N.D.C.C. § 01-02-20 ................................................................ 16

*Tooz v. State,*
    38 N.W.2d 599 (N.D. 1949) .................................................... 16

H.   Senate Bill 2289 does not implicate the Lanham Act because its provisions do not permit a dealer to alter a manufacturer's product or federally registered trademark ................................................................ 16

*Dataphase Sys., Inc. v. C L Systems, Inc.,*
    640 F.2d 109 (8th Cir. 1981) ................................................. 16, 19

*Nokota Horse Conservancy, Inc. v. Bernhardt,*
    666 F. Supp. 2d 1073 (D.N.D. 2009) ...................................... 16, 19

N.D.C.C. § 51-07-01.2(1) ......................................................... 16

N.D.C.C. § 51-07-02.2 .............................................................. 16

15 U.S.C. § 1127 ..................................................................... 16-17

15 U.S.C. § 1121(b) ................................................................. 17

*Int'l Franchise Ass'n, Inc. v. City of Seattle,*
    803 F.3d 389 (9th Cir. 2015) ................................................. 17, 18

15 U.S.C. § 1121(b) ................................................................. 17

*Lisa's Party City, Inc. v. Town of Henrietta,*
    185 F.3d 12 (2nd Cir. 1999) ................................................... 17

v

15 U.S.C. § 1127 ........................................................................... 17

*Mobil Oil Corp. v. Virginia Gasoline Marketers & Auto.
Repair Ass'n Inc.,*
 34 F.3d 220 (4th Cir. 1994) ........................................... 18

*United Indus. Corp. v. Clorox Co.,*
 140 F.3d 1175 (8th Cir. 1998) ....................................... 19

N.D. Const. Art. 5, § 7 .............................................................. 19

N.D.C.C. § 54-12-01 ................................................................ 19

15 U.S.C. § 1125(a)(1)(A) ........................................................ 20

Conclusion ...................................................................................... 20

## STATEMENT OF CASE

Plaintiffs' motion for a Preliminary Injunction requests this Court to enjoin the State from enforcing SB 2289.  In this motion, Plaintiffs claim that SB 2289 is violative of the Contracts Clause, FAA, and Lanham Act. (Doc. 5).

As detailed in the foregoing response brief, Plaintiffs have not demonstrated that SB 2289 threatens them with irreparable harm; that any perceived harm outweighs the injury that the State would incur as a resulting of granting the injunction; that Plaintiffs will likely succeed on the merits; and that the public interest will not be negatively impacted.

Accordingly, the State respectfully requests that this Court deny Plaintiffs' Motion for Preliminary Injunction.

## INTRODUCTION

Plaintiffs claim that SB 2289, effective August 1, 2017 violates three federal statutes and two constitutional clauses.  Plaintiffs claim that SB 2289 violates: (1) the Contracts Clause of the United States Constitution, U.S. Const. art. I, § 10; (2) the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*; (3) the federal trademark statute, 15 U.S.C. § 1051 *et seq.* (the Lanham Act); (4) the Commerce Clause of the United States Constitution, U.S. Const. art. I, § 8, cl. 3; and, (5) 15 U.S.C. § 13 *et seq.* (the Robinson-Patman Act).

"For purposes of the pending motion, however, [Plaintiffs] ask the Court to hold only that the [Plaintiffs] are likely to succeed on their claims under the Contracts Clause, FAA, and Lanham Act." Doc. 10 at 9, n.20 (emphasis added).  Plaintiffs request that this Court enjoin the State from enforcing SB 2289.   However, Plaintiffs have not demonstrated that SB 2289 threatens them with irreparable harm; that any perceived harm outweighs the injury that the State would incur as a result of granting the injunction; that Plaintiffs will likely succeed on the merits; and that the public interest will

1

be negatively impacted.  Consequently, the State respectfully requests that this Court deny Plaintiffs' Motion for Preliminary Injunction (Doc. 5).

### STATEMENT OF FACTS

SB 2289 simply fine-tunes existing law, N.D.C.C. § 51-07-01.2, N.D.C.C. § 51-07-02.2 and N.D.C.C. § 51-26-06.   For over 80 years, North Dakota has regulated the relationships between manufacturers and retailers of farm implements.  E.g., N.D.C.C. § 51-07-01.  For example, in 1937, S.L. 1937, ch. 125, §§ 1, 3 required farm implement manufacturers to buy-back inventory in case of a contract termination.   Additionally, certain practices in farm equipment dealership contracts have been prohibited since 1991. S.L. 1991, ch. 521, § 1 established regulations for farm implement dealership agreements, in areas where manufacturer/dealer contentions commonly arise, such as forced delivery of unordered equipment, price differential discrimination among dealers, and franchise termination.

Since 1991, it has been unlawful in the state of North Dakota for a manufacturer "to coerce or attempt to coerce" a dealer in "farm equipment" to accept delivery of farm equipment which the dealer has not ordered.  N.D.C.C. § 51-07-01.2.1.  Since that same date, it has been unlawful for a manufacturer to "condition or attempt to condition" the sale of farm equipment on the farm equipment dealer's concomitant purchase of "other goods or services."   N.D.C.C. § 51-07-01.2.2.   State law also forbids manufacturers from "coerc[ing] or attempting to coerce" a dealer to refuse to purchase another farm equipment manufacturer's products. N.D.C.C. § 51-07-01.2.3.

Additionally, farm equipment manufacturers may not "discriminate in the prices charged for farm equipment of like grade and quality … [among] similarly situated farm equipment dealers." N.D.C.C. § 51-07-01.2.4.   Likewise, it has been unlawful for a manufacturer to cancel the contract of a dealer "for any reason other than the failure of the farm equipment dealer to comply with the terms of the written contract between the parties." N.D.C.C. § 51-07-01.2.5.  N.D.C.C. § 51-07-01.2 was originally created in 1991

to promote equity and fairness in business dealings between farm equipment manufacturers and dealers.

Against this background of long-standing state regulation over farm implement manufacturer and dealer relationships, the legislature passed SB 2289.  This law, enacted on March 17, 2017, went into effect on August 1, 2017.  It amended N.D.C.C. § 51-07-01.2 and N.D.C.C. § 51-26-06 and increased the level of state regulation over farm equipment dealership contracts.

By regulating the relationships between farm implement manufacturers and farm implement dealers, the legislature intended to benefit the general economy, local businesses, and ultimately, consumers. SB 2289, among other provisions, proscribes farm equipment manufacturers from requiring, within a contract, independent dealers to purchase non-ordered equipment and inventory; to separate product brands; to move a dealership to another location; and to be subject to laws other than the law of North Dakota.  The law also limits manufacturers' ability to impose charge-backs on warranty and incentive payments.

SB 2289 recognized that farm equipment manufacturer and farm equipment dealership agreements tend to be one-sided and reflect an autocratic relationship.  The legislature was concerned that equipment manufacturers were abusing their economic position and that North Dakota businesses and consumers were being harmed. Accordingly, to mitigate the huge disparity in power between these contracting parties, the North Dakota Legislature passed SB 2289, by an overwhelming majority in both chambers.  It was signed by the Governor on March 16, 2017.  Plaintiffs then waited 4 months and 10 days before filing its Motion for Preliminary Injunction on July 25, 2017.[1] Six days after Plaintiffs filed their motion, SB 2289 became effective on August 1, 2017.

---

[1] Plaintiffs decision to wait more than 4 months before bringing this challenge "vitiates much of the force of [its] allegations of irreparable harm" *Novus Franchising, Inc. v. Dawson*, 725 F.3rd 885, 894 (8th Cir. 2013).  Indeed, if the purported harm to Plaintiffs' existing contracts with farm implement dealers is as onerous as Plaintiffs contend, then

## ARGUMENT

I.   **Plaintiffs have failed to satisfy the prerequisites for obtaining the "extraordinary and drastic remedy" of preliminary injunctive relief, especially as asserted against the state.**

This Court should deny Plaintiffs' motion for a preliminary injunction.  Plaintiffs have failed to satisfy the four factors that govern such a drastic remedy.  A preliminary injunction is "an extraordinary remedy." *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).  "A district court has broad discretion when ruling on preliminary injunction requests." *CDI Energy Services v. West River Pumps, Inc.*, 567 F.3d 398, 401 (8th Cir. 2009). The party seeking the injunction has "the complete burden of proving that a preliminary injunction should be granted." *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).  Moreover, the party seeking such relief bears the burden of establishing its propriety with "clear proof."  *Frejlach v. Butler*, 573 F.2d. 1026, 1027 (8th Cir. 1978); *see also Watkins,* 347 F.3rd at 844.

Plaintiffs have a particularly heavy burden in this case because they seek to enjoin enforcement of a state statute.  When a movant seeks to enjoin a state statute, "[the Plaintiffs'] case must contend with 'the well-established rule that the Government has traditionally been granted the widest latitude in the 'dispatch of its own affairs.'" *Rizzo v. Goode*, 423 U.S. 362, 378-79 (1976) (citation omitted). "This 'well-established' rule bars federal courts from interfering with non-federal government operations in the absence of facts showing an immediate threat of substantial injury."  *Martin v. Metro. Atlanta Rapid Transit Auth.*, 225 F. Supp. 2d 1362, 1372 (N.D. Ga. 2002) (quoting *Midgett v. Tri-County Metro. Dist. of Or.*, 74 F. Supp. 2d 1008, 1012 (D. Or. 1999)).

_____

Plaintiffs would not have left the chance that this Court might deny their requested relief to just days before SB 2289 was scheduled to go into effect.  See *Fund for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975) (per curiam) (denying a request to enjoin regulations scheduled to go into effect on the same day the injunction was sought because the movant knew 44 days before the need to seek an injunction).  While "delay alone may justify the denial of a preliminary injunction when the delay is inexplicable," *Novus Franchising*, 725 F.3d at 894, this Court should, at a minimum, consider Plaintiffs' delay in deciding whether they will suffer the level of alleged harm that would justify restraining the enforcement of SB 2289.

At the outset, state legislation enjoys a presumption of validity in the face of constitutional challenges.  The "State 'has the "sovereign right… to protect the … general welfare of the people'" and '"we must respect the 'wide discretion on the part of the legislature in determining what is and what is not necessary,'" *United States Trust Co. of New York v. New Jersey*, 431 U.S. 1, 16 (1977), quoting *City of El Paso v. Simmons*, 379 U.S. 497, 506-507 (1965); quoting *East N.Y. Sav. Bank v. Hahn*, 326 U.S. 230, 232-33 (1945).

Even "[g]reater caution" must be exercised where a government is involved, because "'the Government has traditionally been granted the widest latitude in the dispatch of its own affairs,'" and it is "well-established" that federal courts generally should not "'interfer[e] with non-federal government operations.'" *Martin*, 225 F. Supp. 2d at 1372-73 (quoting *Rizzo*, 423 U.S. at 378-79) (quoting *Brown v. Bd. of Trustees*, 187 F.2d 20, 24 (5th Cir. 1951)).  As the Supreme Court of the United States has cautioned,

> Where, as here, the exercise of authority by state officials is attacked, federal courts must be constantly mindful of the "special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law"
>  . . . .
> When the frame of reference moves from a unitary court system . . . to a system of federal courts representing the Nation, subsisting side by side with 50 state judicial, legislative, and executive branches, appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief.

Rizzo, 423 U.S. at 378-79 (citations omitted).

Whether a preliminary injunction should be issued involves four factors: (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest. *Vonage Holdings Corp. v. Nebraska Pub. Serv. Comm'n,* 564 F.3d 900, 904 (8th Cir. 2009) (citing *Dataphase Sys., Inc. v. C L Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981)).

5

Additionally, North Dakota law includes a stalwart severability provision.   An unconstitutional or invalid statute or clause may be severed from the law containing it, thus preserving much or some of the legislature's work.   N.D.C.C. § 01-02-20; *Tooz v. State*, 38 N.W.2d 599, 609-10 (N.D. 1949).   Accordingly, due to severability, Plaintiffs must meet their burden for injunctive relief on each provision of SB 2289 and the Court must analyze each provision of this statute separately.   Plaintiffs are not entitled to an order enjoining the State from enforcing the statute in its entirety merely by demonstrating a need for such relief based on a single application of one subsection.

Notwithstanding, SB 2289 is in compliance with the Contracts Clause, FAA, and Lanham Act.   There is no need for a preliminary injunction, and Plaintiffs have not met the four factors for a preliminary injunction.

### A.      There is no threat of irreparable harm to Plaintiffs.

Plaintiffs cannot demonstrate any irreparable harm. If Plaintiffs fail to demonstrate irreparable harm, that is "an independently sufficient ground upon which to deny a preliminary injunction." *Watkins*, 346 F.3d at 844. Thus, "[o]nce a court determines that the movant has failed to show irreparable harm absent the injunction, the inquiry is finished and the denial of the injunctive request is warranted." *Gelco Corp.*, 811 F.2d at 420; *Taxpayers' Choice Volunteer Comm. v. Roseau Cty. Bd. of Comm'rs*, 903 F. Supp. 1301, 1308 (D. Minn. 1995).

Plaintiffs claim injuries due to purported harm from the State "leveling the playing field within an Industry."   Plaintiffs argue that "leveling the playing field' between private contracting parties is not a legitimate and substantial public purpose.   However, SB 2289 was not enacted for the sole, narrow purpose of "leveling the playing field" between private contracting parties.   Rather, the broad purpose of SB 2289 is to protect equipment dealers and consumers from perceived abusive and oppressive acts by manufacturers.   SB 2289 was expressly enacted to address "a broad, generalized

economic or social problem." *Allied Structural Steel v. Spannaus*, 438 U.S. 234, 245 (1978);  A*lliance of Auto. Mfrs. v. Gwadosky*, 430 F.3d 30, 43 (1st Cir. 2005).

*Equip. Mfrs. Inst. v. Janklow,* 300 F.3d 842, 860-61 (8th Cir. 2002) – cited by Plaintiffs – is distinguishable because SB 2289 has a much broader purpose than a simple reallocation of contractual responsibilities.  The legislature was specifically concerned that manufacturers shifted costs onto dealers and ultimately consumers through the use of one-sided, nonnegotiable, adhesion contracts.  Like similar state statutes, SB 2289 was enacted "to protect retail [farm equipment dealers] from perceived abusive and oppressive acts by the manufacturers."  *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 439 U.S. 96, 101 (1978) (discussing such laws in general).  Accordingly, SB 2289 has a much broader purpose than simply leveling the playing field between contracting parties.

**B.** **The harm to the State of North Dakota from enjoining its duty and obligation to protect its citizens outweighs any inconvenience to Plaintiffs.**

North Dakota dealers have invested immense amounts of money, time, and effort in building up their dealerships; acquiring sufficient land on which to house, store, and display the large equipment that they sell; hiring and training mechanics and technicians who can service this complex equipment; building and equipping parts departments and large servicing facilities; and training and retaining sales personnel.  The result is that dealers in North Dakota have large "sunk" investments in their dealerships.

Farm equipment manufacturers have, over the years, changed the fundamental terms of their dealership agreements. The relationship was once based upon trust and an economically balanced relationship in which a dealer would continue to represent the manufacturer for as long as the dealer performed the basic job of selling and servicing the manufacturer's products.  However, in more recent years, manufacturers have resorted to one-sided economic relationships that have been reflected in standardized, one-sided form dealership agreements.

Significantly, manufacturers do not give dealers the opportunity to negotiate the terms of these agreements; rather, the dealers, who already are locked into a relationship with the manufacturer by reason of the substantial investments that they have made, have little choice but to sign these agreements since the manufacturers present them on a "take it or leave it basis." Realistically, the dealer does not have the option to "leave it," since that would amount to an abandonment of the huge investment the dealer has made in its business and livelihood.

The dealer agreements that farm equipment manufacturers typically present to dealers include numerous provisions that impose significant disadvantages upon dealers. These provisions are: (1) permit manufacturers to close a single store in a multi-store dealership if that single store is underperforming; (2) that state that not executing a new contract within 90 days is "good cause" for termination of the contract; (3) that restrict sales to non-commercial accounts; and (4) that permit manufacturers to charge back a warranty claim if the manufacturer finds an alleged irregularity.

If the manufacturers were permitted to demand and enforce provisions such as these without any restraint, they could readily destroy or imperil dealers' economic viability. Because Plaintiffs have not carried their burden of showing that the extraordinary relief sought would aid the public interest, and because strong public interest exists, the Court should deny Plaintiffs' motion for preliminary injunction.

## C.    Plaintiffs have not shown a likelihood of success on the merits.

Because pre-existing farm equipment manufacturer-dealer contracts are not substantially impaired, there is no violation of the contract clause. *Janklow*, 300 F.3d at 850 ("If there is no substantial impairment on contractual relationships, the law does not violate the contract clause.").

The provisions of N.D.C.C. § 51-07-01.2 and N.D.C.C. § 51-26-06 previously governed the plaintiffs' agreements. SB 2289 merely added additional requirements. Further, SB 2289's assignment of tractors and other equipment to N.D.C.C. § 51-07-

02.2 is not equivalent to an entirely unregulated industry suddenly being faced with extensive regulation. The plaintiffs' agreements were subject to a statutory scheme that significantly regulated the behavior of the manufacturers and dealers.  While including the plaintiffs within the purview of N.D.C.C. § 51-07-02.2 has created added requirements by which the plaintiffs must act in relation to the agreements, such additions represent mere refinements in the law and do not manifest substantial impairments upon the contracts.

Accordingly, Plaintiffs are not likely to succeed on the merits of their claim that SB 2289 violates the Contracts Clause.

**D.      The public interest would not be served by granting the requested injunctive relief.**

It is in the public interest of the State of North Dakota that the statute continues to be effective.  A significant and legitimate public purpose behind the regulation may be a broad general, social, or economic problem.  *Burlington N. R.R. v. Nebraska*, 802 F.2d 994, 1006 (8th Cir. 1986). "The public purpose need not be addressed to an emergency or temporary situation, as long as the state enacts a generally applicable rule designed to advance the societal interest."  *Id.*

The final determination is whether the adjustment of the rights of the contracting parties is based on "reasonable conditions which justified adoption of the legislation" and is the character appropriate to the public purpose.  *Id.* (citing *Energy Reserves Grp. Inc. v. Kan. Power & Light Co.,* 459 U.S. 400, 412 (1983); *Educ. Employees Credit Union v. Mutual Guar. Corp.*, 50 F.3d 1432, 1438 (8th Cir. 1995).  In making this review, "deference is given to the legislative judgment concerning the necessity and reasonableness of economic and social regulation which affects private contracts. See *Minnesota Ass'n of Health Care Facilities, Inc. v. Minn. Dep't of Pub. Welfare*, 742 F.2d 442, 450 (8th Cir. 1984).

The legislature's exercise of discretion here supports a legitimate state interest. Agriculture is the largest industry in the state, but it is currently a suffering industry. Farm equipment dealers directly support and are necessary to the vitality of agriculture and to agricultural communities.  Dealerships not only sell and service equipment; but they employ substantial numbers of people, represent large investments, and generate substantial cash flow in their communities.  At the same time, however, dealerships operate on thin margins with only slight profits.

If Manufacturers are permitted free rein to take action arbitrarily; to make them buy huge quantities of useless products, to refuse to allow them to sell to qualified buyers, to make them drop lines that they need in order to survive, or to condition the continuance of their businesses upon agreement to onerous and unfair dispute resolution terms -- the narrow margin that dealers subsist on today will likely be disrupted.  Accordingly, the legislature has carefully exercised its discretion for a broad public purpose, and its judgment should be upheld through denial of Plaintiff's request for a preliminary injunction.

SB 2289 is an appropriate adjustment of the rights of the contracting parties based upon the conditions that justified its adoption. See *Educational Employees' Credit Union*, 50 F.3d at 1438; see also *McDonald v. Bd. of Election Comm'rs of Chicago*, 394 U.S. 802, 809 (1969) ("Legislatures are presumed to have acted constitutionally even if source materials normally resorted to for ascertaining their grounds for action are otherwise silent . . .").

The relief that Plaintiffs request would contravene the chief function of a preliminary injunction, which is "to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated." *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1284.  Federal courts "must be constantly mindful of the 'special delicacy of the adjustment to be preserved

between federal equitable power and State administration of its own law.'" *Rizzo*, 423 U.S. at 378 (quoting *Stefanelli v. Minard*, 342 U.S. 117, 120 (1951)).

**E.    The significant public purpose underpinning SB 2289 supports its constitutionality**.

Even if the Court determines that a section of SB 2289 substantially hampers certain provisions within Plaintiffs' existing contracts or that it could impair Plaintiffs' prospective contracts, that does not mean that SB 2289 violates the Contract Clause. "[L]iteralism in the construction of the contract clause . . . would make it destructive of the public interest by depriving the State of its prerogative of self-protection*." Allied Steel*, 438 U.S. at 240.   "The States must possess broad power to adopt general regulatory measures without being concerned that private contracts will be impaired, or even destroyed, as a result."  *U.S. Trust Co.*, 431 U.S. at 22.

Accordingly, even if the Manufacturers could establish substantial impairment of their existing and prospective contracts, SB 2289 is still constitutional because it furthers a significant and legitimate public purpose. *Honeywell, Inc. v. Minn. Life and Health Ins. Guar. Ass'n*, 110 F.3d 547, 551 (8th Cir. 1997).  If a substantial impairment of a contractual relationship exists, a Court must then carefully examine "the nature and purpose of the state legislation." *Allied Steel*, 438 U.S. at 244.

In this case the legislature exercised its judgment that SB 2289 is necessary to refine the statutory protection long afforded agriculture and the agricultural economy and that further stabilization of the relations between farm equipment manufacturers and dealers is in the best interests of the State.  SB 2289 is reasonable and not unduly restrictive. The legislation shows on its face that it balances the interests of both manufacturers and dealers.

Furthermore, because the contracts at issue are private and, thus, there is no danger that the State is using its regulatory power to serve its own pecuniary interests, the Court should 'refuse to second-guess' the legislature's determination that further

11

regulating equipment manufacturers through enacting the aegis of SB 2289 was "a reasonable and necessary way to address its concern." *John Deere v. State*, 130 A.3d 1197, 1213 (N.H. 2015); *Keystone Bituminous Coal Assn. v. DeBenedictis*, 480 U.S. 470, 506 (1987).

**F.     SB 2289 advances an important and legitimate state interest.**

The legislation affecting farm equipment dealerships has ramifications beyond the special interests of "farm implement dealers" and the State of North Dakota has a public interest in protecting farm implement dealerships because their service fulfills a substantial public need in the economic system of the state.  The economy of the state is heavily dependent upon agriculture, and agriculture is dependent upon the availability of modern technology, including farm equipment.

Moreover, farm equipment dealerships reflect long-established, substantial investments and are economic anchors in their communities and critical links in maintaining the vitality of agriculture-the largest industry in the State.  In North Dakota, farm equipment dealerships are typically family businesses that have been in existence for many years, some for generations.  These businesses have been built up gradually over the years on the basis of long-standing relationships with manufacturers, farmers, employees and members of the community.

Farm equipment dealerships are centers of the agricultural communities that they serve; they are the locations where farm equipment is purchased and sold, where farm equipment is serviced, and where farmers and others can visit to purchase parts and obtain advice.  The wide dispersion of dealers throughout the state is critical to farmers, since they must be relatively close to dealers in order to obtain and maintain their equipment.  Additionally, the dealerships are principal employers in their communities, having sales, service and support personnel.  They are also economic centers for their communities.  The revenue generated by equipment dealerships is used to finance the purchase and sale of equipment; farmers in turn finance their purchases, and the

12

movement of this revenue through these communities supports the local banks, lending institutions, allied trades and professions and other activities.

In light of the above, the Legislature determined that SB 2289 was reasonable and necessary.   Because the instant legislation affected private and not public contracts, it is required to accord considerable deference to the legislature as to the reasonableness and necessity of the act. *See Keystone*, 480 U.S. at 505 ("[W]e have repeatedly held that unless the State is itself a contracting party, courts should 'properly defer to legislative judgment as to the necessity and reasonableness of a particular measure.'"); *see also United States Tr. Co. v. New Jersey*, 431 U.S. 1, 22-23 (1977).

Such deference to economic legislation challenged under the contracts clause is widely accepted by appellate courts. *See, e.g., Buffalo Teachers Fed'n v. Tobe*, 464 F.3d 362, 369 (2d Cir. 2006) ("[I]n analyzing public contracts courts use a different approach than that employed in analyzing private ones.   When a law impairs a private contract, substantial deference is accorded."); *Assoc. of Surrogates & Supreme Court Reporters v. New York*, 940 F.2d 766, 771 (2d Cir. 1991) ("Generally, legislation which impairs the obligations of private contracts is tested under the contract clause by reference to a rational-basis test. . . . 'As is customary in reviewing economic and social regulation, however, courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure.'").

**G.    Senate Bill 2289 does not violate the Federal Arbitration Act because the parties may mutually agree to arbitrate disputes.**

Plaintiffs argue that SB 2289 prohibits manufacturers and dealers from agreeing to arbitrate disputes.   This is not accurate.   Rather, SB 2289 prohibits manufacturers from proposing "take it or leave it" agreements that include a mandatory arbitration clause.   Indeed, either the manufacturer or dealer may suggest arbitration as a tool for conflict resolution and, both may mutually agree to such.   However, the key distinction

13

contemplated by SB 2289 is that manufacturers may not unilaterally include the requirement that arbitration be the only vehicle for dispute resolution.

N.D.C.C. 51-07-01.2(1)(l)(5), the arbitration provision within SB 2289, says that, in relation to manufacturer-dealer agreements, an equipment manufacturer may not require a dealer to agree to arbitration, unless that arbitration is conducted in connection with a settlement agreement supported by separate and valuable consideration. The arbitration provision also provides that a manufacturer may not require the dispute to be resolved outside North Dakota. The arbitration provision does not prevent the parties from mutually agreeing to arbitration. Plaintiffs claim that this provision conflicts with the Federal Arbitration Act (FAA), and therefore, violates the supremacy clause.

The FAA provides, in pertinent part:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

"The FAA's purpose was to 'make the contracting party live up to his agreement.'" *DIRECTV, Inc. v. Imburgia*, 136 S.Ct. 463, 477 (2015) (quoting *H.R.Rep. No. 68-96, at 1* (1924)). However, "Congress in 1925 could not have anticipated that the Court would apply the FAA to render consumer adhesion contracts invulnerable to attack by parties who never meaningfully agreed to arbitration in the first place." *DIRECTV*, 136 S.Ct. at 477-78. Rather, the pretense of ascertaining Congressional intent with respect to the FAA has been abandoned, "building instead, case by case, an edifice of its own creation." *Id.* at 478 (quoting *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 283 (1995)).

Although an outright prohibition on arbitration is generally displaced by the FAA, "the inquiry becomes more complex when a doctrine normally thought to be generally

applicable, such as duress or . . . unconscionability, is alleged to have been applied in a fashion that disfavors arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011).   Furthermore, "[t]he FAA lets parties tailor some, even many, features of arbitration by contract, including … procedure and choice of substantive law." *DIRECTV,* 136 S.Ct. at 473 (quoting *Hall Street Assoc., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 586 (2008)).

SB 2289 does not prohibit an arbitration provision in manufacturer-dealer agreements.   It merely prohibits a manufacturer from unilaterally demanding an arbitration provision.   In fact, the dealers have never meaningfully agreed to the arbitration clauses in the existing agreements because the arbitration clauses were within adhesion contracts drafted by the manufacturers.   In essence, a manufacturer would present an adhesion contract with an arbitration provision, and a dealer would lose that contract opportunity if the dealer mandated that the arbitration provision be removed.   Thus, if a dealer wanted to enter into an agreement with a manufacturer, it had no choice but to accept the arbitration provision.   SB 2289, however, merely provides that a manufacturer may not require the arbitration provision – it does not prohibit both parties from mutually agreeing to the provision or prohibit the dealer from requiring the arbitration provision.

Additionally, the provisions of SB 2289 restricting dispute resolution to North Dakota do not violate the FAA.   As the courts in *DIRECTV* and *Hall Street* recognized, the FAA permits parties to tailor various features of arbitration, including procedure and choice of substantive law.   Therefore, the provisions limiting dispute resolution to North Dakota do not violate the FAA.

Accordingly, Plaintiffs do not meet any of the four prerequisites for the granting of a preliminary injunction in relation to the arbitration clause.   Even if the Court finds a substantial impairment, such impairment is justified by the significant and legitimate public purpose behind it.   The state has a paramount interest in agriculture, its largest

industry, and in preserving that industry, SB 2289 is a reasonable and rational legislative effort to serve the purpose of preserving and enhancing the state's largest industry.

However, even if this Court were to conclude that SB 2289 conflicted with and was preempted by the FAA, the arbitration provision is severable from the remainder of SB 2289 in light of North Dakota's pragmatic and long-standing severability provision. See N.D.C.C. § 01-02-20; *Tooz*, 38 N.W.2d at 291-92.

## H.    Senate Bill 2289 does not implicate the Lanham Act because its provisions do not permit a dealer to alter a manufacturer's product or federally registered trademark.

The first *Dataphase* factor assesses the threat of irreparable harm to the moving party.  *Nokota Horse Conservancy, Inc. v. Bernhardt*, 666 F. Supp. 2d 1073, 1077 (D.N.D. 2009).  The Plaintiffs have not shown how any of the impacts of SB 2289 fall under the Lanham Act.

Plaintiffs argue SB 2289 violates their rights to control the quality associated with their trademarks and the Lanham Act preempts state law.  On the contrary, SB 2289 does not permit a dealer to alter, or affect in any way, the quality of a manufacturer's products or trademark.  In addition, no provision of SB 2289 is expressly preempted, or in violation of, the Lanham Act.

The specific provisions of SB 2289 at issue, and now codified in N.D.C.C. § 51-07-01.2(1), are subdivisions (d), (e), (h), and (k) as well as N.D.C.C. § 51-07-02.2 (collectively, the "disputed provisions").  In general, the disputed provisions liberate dealers from unreasonable restrictions regarding the operations of their implement dealerships.  While the disputed provisions provide more autonomy for the dealers, they do not violate the Lanham Act.

Plaintiffs cite only two sections of the Lanham Act that SB 2289 purportedly violates.  Doc. 10 at 14-15.  The first section cited by Plaintiffs is 15 U.S.C. § 1127, the general purpose of the Act.  It states, that "[t]he intent . . . is to . . . protect registered

marks used in such commerce from interference by State . . . legislation . . . ."  15 U.S.C. § 1127; Doc. 10 at 14.   However, Plaintiffs do not identify how the disputed provisions violate this general intent statement.

The second cited section is 15 U.S.C. § 1121(b).  It states, in pertinent part, that "[n]o State . . .  may require alteration of a registered mark, or require that additional trademarks, service marks, [etc.] that may be associated with or incorporated into the registered mark be displayed in the mark . . . ."  15 U.S.C. § 1121(b); Doc. 10 at 15 (emphasis added).  Plaintiffs do not indicate how any of the disputed provisions allow a dealer to alter a trademark or require additional items to be displayed in a mark.

Contrary to Plaintiffs' conclusory assertion, "the Lanham Act does not expressly preempt state law[.]"  *Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 409 (9th Cir. 2015).   State law can only be preempted by the Lanham Act if it conflicts with the Act.  *See*, *id*.  In *Int'l Franchise Ass'n, Inc*., the court recognized that, "apart from a general purposive statement[,]" "[Plaintiff] does not indicate which provision of the Lanham Act preempts the [statute][.]"  *Id*.   Accordingly, the court determined the Lanham Act did not indicate an intent to preempt the disputed ordinance and the district court properly found the plaintiff was unlikely to succeed on its claim.  *Id*. at 410.

Plaintiffs claim SB 2289 is expressly preempted by 15 U.S.C. § 1121(b).  However, § 1121(b) relates to legislation that requires alteration or the display of additional requirements in recognized marks.  A claim falls under § 1121(b) when a statute requires an entity to alter its federally registered trademark.  See *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 15 (2nd Cir. 1999).  As previously noted, none of the disputed provisions have any such requirements.  Rather, SB 2289 does not permit a dealer to alter a manufacturer's trademark.  Thus, 15 U.S.C. § 1121(b) is entirely inapplicable.

The only remaining section of the Lanham Act, that Plaintiffs claim SB 2289 is in violation of, is the general intent under 15 U.S.C. § 1127.  Similar to the plaintiff in *Int'l*

*Franchise Ass'n, Inc.*, Plaintiffs here have merely stated a conclusory purposive statement that "Senate Bill 2289 runs afoul of the very purpose of the Lanham Act, the intent of which is 'to protect registered marks used in [interstate] commerce from interference by the State, or territorial legislation.'"  Doc. 10 at 14.  Similar to the court's conclusion in *Int'l Franchise Ass'n, Inc.*, Plaintiffs here do not prevail on their general purposive statement claim because the Lanham Act does not indicate an intent to preempt the disputed provisions.

Moreover, the disputed provisions do not affect a manufacturer's control over the quality of the products.  In *Mobil Oil Corp. v. Virginia Gasoline Marketers & Auto. Repair Ass'n Inc.*, the disputed statute prohibited terms in the franchise agreements between petroleum refiners and retails franchisees. 34 F.3d 220, 223 (4th Cir. 1994).  The restrictions in the statute included "no maximum stations," "no quotas," and "no minimum hours."  *Id.* at 226.  The court determined the provisions did not significantly impact the plaintiff's ability to control the quality of its products because the actual products remained unaltered.  *See*, *id.*  Thus, the court held the disputed statute did not conflict with the Lanham Act and the Lanham Act did not impliedly preempt the disputed statute.  *Id.* at 227.

Similarly, the disputed provisions here allow a dealer to decide the product display within the dealership to be free from forced premises renovations, to be free from a required amount of inventory, and to propose a transfer of license agreements.  The disputed provisions do not, however, allow a dealer to alter the quality of the product or the trademark associated with a product.  For example, SB 2289 would allow a dealer to place a John Deere combine next to a Kubota combine on the dealership lot.  But SB 2289 does not permit a dealer to alter either combine or to place a John Deere trademark on Kubota equipment.  Consequently, the quality of the products are not affected and a manufacturer still retains full control over the quality of the product stamped with its trademark.

18

The Plaintiffs have failed to identify a provision of the Lanham Act that SB 2289 purports to violate because no provision within SB 2289 even implicates the Lanham Act.  SB 2289 does not permit dealers to alter a trademark or product.  Therefore, SB 2289 is not preempted by, or in violation of, the Lanham Act and the Plaintiffs cannot show irreparable harm.  "[F]ailure to demonstrate the threat of irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction."  *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1183 (8th Cir. 1998).

The second *Dataphase* factor assesses the state of the balance between the harm and injury granting the injunction will inflict on the other parties litigant.  *Nokota,* 666 F. Supp. 2d at 1077.  Although there is no threat of harm under the Lanham Act issues, the Plaintiffs generally argue for all of their claims that the State has no interest in enforcing SB 2289.  Although the Defendants do not necessarily have a personal stake in the outcome of the injunction request, the Plaintiffs' assertion that the Defendants have no interest in defending SB 2289 is inaccurate.  The Defendants are bound by the North Dakota Constitution and N.D.C.C. to carry out the laws passed by the North Dakota Legislature.  *See* N.D. Const. Art. 5, § 7; N.D.C.C. § 54-12-01. Granting the preliminary injunction prevents the Defendants from executing their duties. Perceived abusive and oppressive acts by the manufacturers would not be remedied. As a result, Defendants would be harmed.

The third *Dataphase* factor assesses the probability that the movant will succeed on the merits.  *Nokota*, 666 F.Supp.2d. at 1077.  As previously discussed, the Plaintiffs' issues are not actionable under the Lanham Act.  Consequently, there is a minimal likelihood that Plaintiffs may prevail on their trademark allegations under the Lanham Act.

Finally, the fourth *Dataphase* factor assesses public interest.  *Id.*  Although the Plaintiffs do not cite the specific Lanham Act violation, they broadly argue public interest will be served by "reducing the risks for consumer confusion or deception caused by

Senate Bill 2289's effects on federally registered trademarks." Doc. 10 at 19-20. However, under 15 U.S.C. § 1125(a)(1)(A), which is not cited by the Plaintiffs, liability is imposed on a person that uses a name, symbol, etc. which is likely to cause confusion.

This fourth factor weighs heavily in favor of Defendants. Once again, no provision in SB 2289 allows a dealer to alter a trademark or product. The notion that a dealer would be allowed to place a Case tractor next to a Caterpillar tractor is not a cause for confusion. Plaintiffs argue that members of the public have come to know and rely upon a manufacturer's trademarks as signs of quality, consistency, and value. The Defendants agree. However, SB 2289 does not allow a dealer to alter a manufacturer's equipment or trademark. Under SB 2289, the equipment will retain the same quality from manufacturer to consumer. Placing two competing manufacturers' products side-by-side on the dealer lot does not implicate the Lanham Act. Indeed, public interest would be served by allowing consumers to select the most appropriate product for their needs and reducing the distance a consumer has to travel in rural North Dakota to shop for the various products offered by farm equipment implement dealers.

The Plaintiffs have not provided sufficient support to prevail on any factor of the four-part *Dataphase* test. Therefore, Plaintiffs' preliminary injunction request under the Lanham Act claims should be denied.

## CONCLUSION

For the foregoing reasons, the State respectfully requests that Plaintiffs' motion for preliminary injunction be denied.

20

Dated this 29th day of September, 2017.

Wayne K. Stenehjem
State of North Dakota
Attorney General

By:   /s/  J.P. Bialke
   J.P. Bialke
   Assistant Attorney General
   State Bar ID No.  04861
   Office of Attorney General
   500 North 9th Street
   Bismarck, ND 58501-4509
   Telephone (701) 328-3640
   Facsimile (701) 328-4300
   Email jbialke@nd.gov

By:   /s/  Nathan J. Svihovec
   Nathan J. Svihovec
   Assistant Attorney General
   State Bar ID No.  08332
   Office of Attorney General
   500 North 9th Street
   Bismarck, ND 58501-4509
   Telephone (701) 328-3640
   Facsimile (701) 328-4300
   Email njsvihovec@nd.gov

Attorneys for Defendants.