IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| ASSOCIATION OF EQUIPMENT MANUFACTURERS, AGCO CORPORATION, CNH INDUSTRIAL AMERICA LLC, DEERE & COMPANY, and KUBOTA TRACTOR CORPORATION,<br>　　　Plaintiffs,<br>v.<br>THE HON. DOUG BURGUM, Governor of the State of North Dakota, in his Official Capacity, and<br>THE HON. WAYNE STENEHJEM, Attorney General of the State of North Dakota, in his Official Capacity,<br>　　　Defendants,<br>and<br>North Dakota Implement Dealers Association,<br>　　　Intervenor. | Case No. 1:17-cv-00151-DLH-CSM |

**REPLY MEMORANDUM IN SUPPORT OF
THE MANUFACTURERS' MOTION FOR PRELIMINARY INJUNCTION**

## **TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ........................................................................................ 1

II.   ARGUMENT................................................................................................................... 1

     A.    The State's Opposition Does Not Address the Irreparable Harm That the Manufacturers Are Likely to Suffer Absent Preliminary Injunctive Relief. .......... 1

     B.    The Manufacturers Are Likely to Succeed on the Merits of Their Contracts Clause, FAA, and Lanham Act Challenges to S.B. 2289. ...................... 3

          1.    The State's Opposition concedes the essential elements of the Manufacturers' Contracts Clause challenge to S.B. 2289. ......................... 3

          2.    The authority cited in the State's Opposition establishes that S.B. 2289 is in fact preempted by the Federal Arbitration Act. ........................ 5

          3.    The State's Opposition fails to address the irreconcilable conflicts between S.B. 2289 and the Manufacturers' trademark rights..................... 6

     C.    The "Offending Provisions" Challenged by the Manufacturers Are Not Severable from the Remaining Provisions of S.B. 2289. ......................... 7

## I.  PRELIMINARY STATEMENT

In *Janklow*, the Eighth Circuit rejected the contention that the amendments to the South Dakota equipment dealer statute at issue "were simply a 'fine tuning' of pre-existing South Dakota law."[1] While insisting that *Janklow* is somehow "distinguishable" (Dkt. # 43 at p. 14 of 28), the State of North Dakota makes the very same "fine tuning" argument that the Eighth Circuit rejected in that case—claiming that "SB 2289 simply fine-tunes existing law." (Dkt. # 43 at p. 9 of 28). S.B. 2289 itself, however, shows the extensive changes to pre-existing code sections that took effect August 1. (Dkt. # 1-3).[2] Many "Offending Provisions" are comparable to provisions of other state laws[3] invalidated by the Eighth Circuit in *Janklow* and *Branstad*.[4] The State cites no authority—because there is none—for upholding S.B. 2289.[5]

## II.  ARGUMENT

### A.  The State's Opposition Does Not Address the Irreparable Harm That the Manufacturers Are Likely to Suffer Absent Preliminary Injunctive Relief.

The State's Opposition offers no support for its proclamation that "[t]here is no threat of irreparable harm to Plaintiffs." (Opp. at 6). Indeed, the State has effectively conceded the issue by failing to address any of the evidence, arguments, and authority cited by the Manufacturers in

---

[1] *Equip. Mfrs. Inst. v. Janklow*, 300 F.3d 842, 847 (8th Cir. 2002), quoting 136 F. Supp. 2d 991, 999 (D.S.D. 2001).
[2] *See also* Fed. R. Evid. 1006 Summary of S.B. 2289's Changes to Existing Law (**Exhibit A**).
[3] *See* Fed. R. Evid. 1006 Summary of Other State Laws Comparable to S.B. 2289 (**Exhibit B**).
[4] *Holiday Inns Franchising, Inc. v. Branstad*, 29 F.3d 383 (8th Cir. 1994), *aff'ing McDonald's Corp. v. Nelson*, 822 F. Supp. 597, 606 (S.D. Iowa 1993).
[5] Curiously, the authority cited by the State for the proposition "that federal courts generally should not 'interfer[e] with non-federal government operations'" (Dkt. # 43 at p. 12 of 28) is in fact a case in which the court **granted** a preliminary injunction against a state agency for violating federal law. *Martin v. Metro. Atlanta RTA*, 225 F. Supp. 2d 1362, 1383 (N.D. Ga. 2002). Similarly, two of the key Supreme Court cases that the State cites for the proposition that states have the prerogative to impair private contracts (Dkt. # 43 at p. 18 of 28) are in fact cases sustaining challenges to state laws under the Contracts Clause. *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 250 (1978); *U.S. Trust Co. of New York v. New Jersey*, 431 U.S. 1, 21 (1977).

support of their claim of irreparable harm.  Under the precedents cited by the Manufacturers, the State's sovereign immunity alone establishes irreparable injury because money damages are not available to compensate the Manufacturers for any injuries that will result from the enactment and enforcement of S.B. 2289.  (Dkt. # 10 at p. 18 of 21).  The State's Opposition also fails to address the precedents cited by the Manufacturers finding irreparable injury as a matter of law based on "constitutional injury," injury to the Manufacturers' reputation and customer relationships,[6] and the business uncertainty created by S.B. 2289.  (Dkt. # 10 at pp. 17-18 of 21).

Like the franchisors and franchisees whose contractual rights and obligations were rearranged by the Iowa statute at issue in *Branstad*, the Manufacturers and their North Dakota dealers "should not be forced to act at their peril before a determination of these issues." 822 F. Supp. at 605.  Here, the Offending Provisions would allow North Dakota dealers to make such significant changes to their operations and contractual relationships[7] that "it will be difficult or even impossible for anyone to 'unscramble the egg'"[8] after the fact.

The State's only argument on irreparable harm is its insistence that S.B. 2289 is not "level-the-playing-field" legislation of the type invalidated by the Eighth Circuit in *Janklow*.[9]

---

[6] *See, e.g., Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc.*, 633 F.2d 746, 753 (8th Cir. 1980).

[7] For example, the "No Minimum Inventory or Order Requirements" and "No Exclusivity" Provisions would allow dealers to use the Manufacturers' trademarks as "bait" to attract customers only to then "switch" them to competing products from sources with which they may not currently have dealer agreements.  (Compl. Dkt. # 1 ¶¶ 56, 64).

[8] *See Texas v. United States*, 86 F. Supp. 3d 591, 673 (S.D. Tex. 2015).

[9] In a footnote, the State also asserts that the Manufacturers' "decision to wait more than 4 months before bringing this challenge 'vitiates much of the force of [their] allegations of irreparable harm.'"  (Dkt. # 43 at p. 10 of 28 n.1) (quoting *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 894 (8th Cir. 2013)).  In *Novus Franchising*, the plaintiff had waited seventeen months before seeking preliminary injunctive relief.  The Eighth Circuit has since held that a seven-month delay in seeking injunctive relief "does not bar a finding of irreparable harm." *McKinney v. Southern Bakeries, LLC*, 786 F.3d 1119, 1125 (8th Cir. 2015).  Here, the Manufacturers brought their challenge **before** S.B. 2289 was scheduled to take effect.  Since then, briefing and argument of the preliminary injunction motion have been delayed because **the**

2

This argument, however, goes to likelihood of success on the merits—*not* whether the Manufacturers are likely to suffer irreparable harm in the absence of an injunction. Besides being irrelevant to the issue of irreparable harm, this argument is demonstrably incorrect.

### B. The Manufacturers Are Likely to Succeed on the Merits of Their Contracts Clause, FAA, and Lanham Act Challenges to S.B. 2289.

The State's Opposition does not even address the Manufacturers' threshold argument that "Senate Bill 2289 was not developed through a reasoned democratic process." (Dkt. # 10 at p. 8 of 21). As a result, the Manufacturers need only show a "fair chance of success" on the merits.[10] In any event, the State's Opposition simply confirms that the Manufacturers are in fact "likely to prevail on the merits," *i.e.*, they have a 51% or greater chance of success on the merits.[11]

#### 1. The State's Opposition concedes the essential elements of the Manufacturers' Contracts Clause challenge to S.B. 2289.

Under the Contracts Clause, upon a showing by the Manufacturers that S.B. 2289 substantially impairs their existing contracts, the burden shifts to the State to show that the law has a "significant and legitimate public purpose." *Janklow*, 300 F.3d at 850. In support of their "substantial impairment" claim, the Manufacturers have submitted affidavits identifying which provisions of their Existing Dealership Agreements would be impaired by S.B. 2289 and why. (Dkt. # 11 ¶¶ 3, 5-12; Dkt. # 12 ¶¶ 6-27, 29; Dkt. # 13 ¶¶ 4-14; Dkt. # 14 ¶¶ 3, 5-17, 19). Rather than address the merits, the State's Opposition simply declares that "pre-existing farm

---

*State* sought and obtained an extension of time for its response. To prevent irreparable harm in the interim, the Manufacturers conditioned their consent to such an extension on the State's agreement not to "enforce or institute an action for any alleged violation of any of the provisions of Senate Bill 2289 until the Court has ruled on the merits of the Motion for Preliminary Injunction." (Dkt. # 30 at p. 2 of 3). The State's actions in agreeing to this condition speak louder than its words that "[t]he harm to the State . . . from enjoining its duty and obligation to protect its citizens outweighs any inconvenience to Plaintiffs" (Dkt. # 43 at p. 14 of 28).
[10] *North Dakota v. EPA*, 127 F. Supp. 3d 1047, 1054-55 (D.N.D. 2015).
[11] *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 731-32 (8th Cir. 2008).

3

equipment manufacturer-dealer contracts are not substantially impaired," citing *Janklow* for the proposition that "[i]f there is no substantial impairment of contractual relationships, the law does not violate the Contracts Clause."  (Dkt. # 43 at p. 15 of 28) (quoting 300 F.3d at 850).  *Janklow,* however, is among the precedents establishing that the Offending Provisions substantially impair material terms of pre-existing farm equipment dealership agreements, as **Exhibit B** demonstrates graphically.

Having failed to rebut the factual and legal support for the Manufacturers' claim of substantial impairment, "[t]he State bears the burden of proof in showing a significant and legitimate public purpose." *Janklow,* 300 F.3d at 859.  In an effort to distinguish the holding in *Janklow* that "leveling the playing field . . . is expressly prohibited as a significant and legitimate public interest" (*id.* at 861), the State argues that S.B. 2289 was intended to serve some other purpose.  Where is the evidence of some other purpose?  The State cites no legislative history or findings, and it offers no affidavits or other extrinsic evidence of legislative intent.  Try as it might, the State simply cannot explain away the statement of S.B. 2289's co-sponsor that it was intended to provide a "level playing field to our implement dealers."  (Dkt. # 10 at p.12 of 21).

Without any citation to the legislative history, the State hypothesizes that perhaps S.B. 2289 was intended "to mitigate the huge disparity in power between these contracting parties," "to protect equipment dealers and consumers from perceived abusive and oppressive acts by manufacturers," or to protect dealers from "one-sided, nonnegotiable, adhesion contracts."  (Dkt. # 43 at pp. 10, 13, and 14 of 28).  On inspection, these supposed alternative purposes are all just gussied-up ways of saying the same thing:  S.B. 2289 seeks a "level playing field" for farm equipment dealers.  The premise of the State's argument is that—"in more recent years"— "manufacturers have resorted to one-sided economic relationships that have been reflected in

4

standardized, one-sided form dealership agreements." (Dkt. # 43 at p. 14 of 28). In fact, dealers have been alleging that farm equipment dealership agreements are contracts of adhesion for decades. *See, e.g., Int'l Harvester Credit Corp. v. Leaders*, 818 F.2d 655, 657, 659-60 (8th Cir. 1987) (enforcing a farm equipment dealership from 1970).[12] S.B. 2289 is not necessary to protect North Dakota dealers from contracts of adhesion, which are already unenforceable if they "demonstrate some quantum of both procedural and substantive unconscionability." *Strand v. U.S. Bank National Ass'n ND*, 693 N.W.2d 918, 924 (N.D. 2005).[13]

### 2. The authority cited in the State's Opposition establishes that S.B. 2289 is in fact preempted by the Federal Arbitration Act.

The Supreme Court opinion cited by the State for the proposition that "Congress in 1925 could not have anticipated that the Court would apply the FAA to . . . consumer adhesion contracts" is actually a ***dissent***.[14] The majority opinion enforced the arbitration provision.[15] "Mere inequality in bargaining power . . . is not enough by itself to overcome the federal policy favoring arbitration." *Stroklund v. Nabors Drilling USA, LP*, 722 F. Supp. 2d 1095, 1099 (D.N.D. 2010), quoting *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004). S.B. 2289's prohibition on "requiring" arbitration is preempted by the FAA.[16]

---

[12] International Harvester Co. was a predecessor company of Plaintiff CNH Industrial America LLC. (Dkt. # 12 ¶ 4). *See also Ford v. Int'l Harvester Co.*, 399 F.2d 749, 750-51 (9th Cir. 1968) (referencing "standard-form" farm dealership contracts entered into between 1959 and 1961); *Adams v. John Deere Co.*, 774 P.2d 355, 360 (Kan. Ct. App. 1989) (enforcing a 1976 "take-it-or-leave-it" Deere dealership agreement).

[13] Because North Dakota dealers are already protected from the most serious alleged abuses that supposedly motivated S.B. 2289's enactment, there is no merit to the State's argument that two other *Dataphase* factors—the balance of the harms and the public interest—weigh against granting a preliminary injunction.

[14] *See DIRECTV, Inc. v. Imburgia*, 136 S.Ct. 463, 477-78 (2015) (Ginsburg, J., dissenting).

[15] *Id.* at 471.

[16] *See, e.g., KKW Enters., Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp.*, 184 F.3d 42, 52 (1st Cir. 1999).

5

### 3. The State's Opposition fails to address the irreconcilable conflicts between S.B. 2289 and the Manufacturers' trademark rights.

In *Branstad*, the Eighth Circuit upheld the district court's finding that the Iowa statute interfered with franchisors' ability to "maintain[] adequate control over the quality of services provided under their licensed trademarks." 822 F. Supp. at 606. S.B. 2289's interference with the Manufacturers' trademark rights is even more egregious. It constitutes "interference by State, or territorial legislation" prohibited by Section 45 of the Lanham Act, 15 U.S.C. § 1127. S.B. 2289 is nothing like the minimum wage requirement that the Ninth Circuit found "does not interfere with a franchise's ability to maintain quality." *Int'l Franchise Ass'n v. City of Seattle*, 803 F.3d 389, 410 (9th Cir. 2015). On its face, S.B. 2289 invalidates the trademark separation, appearance, performance, exclusivity, and other quality control provisions of farm equipment dealership agreements. It is therefore distinguishable from New Jersey's "good cause" requirement for termination, which permitted franchisors to enforce quality control standards. *Mariniello v. Shell Oil Co.*, 511 F.2d 853, 858 (3d Cir. 1975). When the Fourth Circuit found preemption of state franchise law by the federal Petroleum Marketing Practices Act but not the Lanham Act, it so held only because the Virginia statute at issue did not prevent the franchisor "from maintaining the quality of its products and services." *Mobil Oil Corp. v. Virginia Gasoline Marketers and Automotive Repair Ass'n*, 34 F.3d 220, 226 (4th Cir. 1994). The Eighth Circuit has also recognized the quality control rights afforded trademark licensors. *Mid-State Aftermarket Body Parts, Inc. v. MQVP, Inc.*, 466 F.3d 630, 634 (8th Cir. 2006).

Here, each of the Manufacturers has licensed its North Dakota dealers to use its trademarks to identify their dealerships—but only if the dealers comply with the quality control provisions of the Existing Dealership Agreements. In other words, the dealership must actually have the Manufacturer's products in stock, it must meet the Manufacturer's appearance and

performance standards, and it cannot use the Manufacturer's trademarks as "bait" to "switch" customers to some other supplier's products. The authorities cited by the State do not stand for the proposition that North Dakota dealers can violate the provisions of their trademark licenses as long as they do not tamper with the trademarks identifying the products themselves.

### C. The "Offending Provisions" Challenged by the Manufacturers Are Not Severable from the Remaining Provisions of S.B. 2289.

Of the various provisions of S.B. 2289 (Dkt. # 1-3), only one—a definition of "farm equipment" and "farm implements"[17]—is completely beyond the scope of the Manufacturers' challenge.[18] The Offending Provisions of S.B. 2289 "are so connected and dependent upon each other that it cannot be presumed that the Legislature would have enacted the valid sections without the unconstitutional sections." *Arneson v. Olson*, 270 N.W.2d 125, 137 (N.D. 1978). In any event, Century Code § 1-02-20 does not envision that a court will engage in a "blue pencil" exercise at the preliminary injunction stage. Rather, the statute envisions that a court will sever unenforceable provisions from a statute upon a "judgment" of invalidity—not upon a preliminary finding that the Manufacturers have a likelihood of showing invalidity. The Manufacturers therefore respectfully request that the Court maintain the status quo[19] by preliminarily enjoining enforcement of S.B. 2289 in its entirety.

---

[17] *See* N.D. Cent. Code § 51-07-01.2(2) (effective Aug. 1, 2017).

[18] The "No Arbitration" Provision is part of a new statutory section that also invalidates certain choice of law and forum selection clauses. N.D. Cent. Code § 51-07-01.2(l) (effective Aug. 1, 2017). As applied to arbitration clauses, the requirement that dispute resolution take place in North Dakota is preempted by federal law. *See, e.g.*, *KKW Enters.*, 184 F.3d at 52; *Cahill v. Alternative Wines, Inc.*, No. 12-CV-110-LRR, 2013 U.S. Dist. LEXIS 14588 (N.D. Iowa Feb. 4, 2013).

[19] "The status quo is the last uncontested status which preceded the pending controversy." *Minn. Mining & Mfg. Co. v. Meter*, 385 F.2d 265, 273 (8th Cir. 1967) (quotation omitted).

Dated: October 6, 2017

Respectfully submitted,

ASSOCIATION OF EQUIPMENT MANUFACTURERS,
AGCO CORPORATION,
CNH INDUSTRIAL AMERICA LLC,
DEERE & COMPANY, and
KUBOTA TRACTOR CORPORATION

By:  s/ Timothy Q. Purdon

Timothy Q. Purdon (ND Bar #05392)
ROBINS KAPLAN LLP
1207 West Divide Avenue, Suite 200
Bismarck, North Dakota 58503
(701) 255-3000

Katherine S. Barrett Wiik
ROBINS KAPLAN LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402
(612) 349-8500

Counsel

Michael J. Lockerby (*pro hac vice*)
Benjamin R. Dryden (*pro hac vice*)
Lauren A. Champaign (*pro hac vice*)
Jarren N. Ginsburg (*pro hac vice*)
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street, NW, Sixth Floor
Washington, D.C. 20007
(202) 672-5300

Connor A. Sabatino (*pro hac vice*)
FOLEY & LARDNER LLP
Verex Plaza
150 East Gilman Street
Madison, Wisconsin 53703
(608) 258-4273

*Counsel for Plaintiffs, Association of Equipment Manufacturers, AGCO Corporation, CNH Industrial America LLC, Deere & Company, and Kubota Tractor Corporation*