**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| ASSOCIATION OF EQUIPMENT MANUFACTURERS, | ) ) ) | |
| AGCO CORPORATION, | ) ) | |
| CNH INDUSTRIAL AMERICA LLC, | ) ) | |
| DEERE & COMPANY, and | ) ) | |
| KUBOTA TRACTOR CORPORATION, | ) ) | |
| Plaintiffs, | ) ) | Case No. 1:17-cv-00151-CSM |
| v. | ) ) | |
| THE HON. DOUG BURGUM, Governor of the State of North Dakota, in his Official Capacity, | ) ) ) | |
| and | ) ) | |
| THE HON. WAYNE STENEHJEM, Attorney General of the State of North Dakota, in his Official Capacity, | ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| NORTH DAKOTA IMPLEMENT DEALERS ASSOCIATION, | ) ) ) | |
| Intervenor. | ) | |

**MEMORANDUM IN SUPPORT OF THE MANUFACTURERS' MOTION TO COMPEL
NDIDA'S RESPONSE TO DOCUMENT REQUEST NO. 4 AND TO MAKE
MATTHEW LARSGAARD AVAILABLE FOR SUPPLEMENTAL DEPOSITION**

Plaintiffs ("the Manufacturers"), by counsel, respectfully state as follows in support of

their motion to compel the North Dakota Implement Dealers Association ("NDIDA") to respond

to the Manufacturers' Document Request No. 4 ("Request No. 4") and to make NDIDA

President and CEO Matthew Larsgaard ("Mr. Larsgaard") available for a supplemental

deposition limited in both duration and scope.

## I.      **PRELIMINARY STATEMENT**

As fact discovery drew to a close, NDIDA disclosed that it had been withholding documents responsive to Request No. 4, which called for documents related to "drafting, preparation, enactment, or passage of" Senate Bill 2289.  Not long before that revelation, when Mr. Larsgaard was deposed, NDIDA also objected to and instructed the witness not to answer a series of questions directed at the same subject matter.  One of the bases on which NDIDA justified its refusal to provide or permit such discovery was its assertion of a so-called "First Amendment Privilege."  The Manufacturers later learned that NDIDA had withheld responsive documents based on this privilege and on other grounds that had not previously been disclosed.

Although Request No. 4 calls for documents from January 1, 2015 to present, NDIDA announced at the end of discovery that it had "interpreted" the request to call only for documents that post-date the introduction of Senate Bill 2289, *i.e.*, after January 19, 2017.  Based upon this interpretation, NDIDA has effectively eliminated documents related to Senate Bill 2289's "drafting" and "preparation" from the scope of Request No. 4.  NDIDA has thus artificially limited the scope of Request No. 4 so that it pertains to only a few dozen documents—less than a third of which NDIDA has actually produced.

NDIDA's interpretation of Request No. 4 and its assertion of the First Amendment Privilege are without merit.  This Court should compel NDIDA to produce documents in response to the Request and to make Mr. Larsgaard available for a supplemental deposition, not to exceed one hour in length, to answer legitimate questions that he refused to answer at his original deposition.

## II.      PROCEDURAL HISTORY

This litigation began in July 2017, when the Manufacturers challenged the constitutionality of Senate Bill 2289 by suing the Governor and Attorney General of North Dakota (collectively, the "State") in their official capacities as the executives charged with enforcing North Dakota's laws.  (Dkt. # 1).  Soon thereafter, NDIDA sought leave to intervene to help the State defend Senate Bill 2289.   (Dkt. # 32).   In support of its motion, NDIDA represented to the Court and to the parties as follows:

> NDIDA also helped draft this bill, which means NDIDA has first-hand knowledge of the purpose of the bill and other evidence. ***This knowledge and evidence is critical to showing that the bill does not violate the Lanham Act, the Robinson-Patman Act, or the Constitution.***

(Dkt. # 32-1) (emphasis added).  Based in no small part on this representation, the Manufacturers did not oppose NDIDA's motion to intervene.  (Dkt. # 37).  Accordingly, NDIDA's motion was granted, and NDIDA became a party to this litigation.  (Dkt. # 41).

In the hope of obtaining the "critical" knowledge and evidence that NDIDA claimed to have, the Manufacturers served NDIDA and the State with their First Discovery Requests on January 19, 2018—just three days after fact discovery began.  These discovery requests included a grand total of seven document requests.  The document request at issue, Request No. 4, seeks "[a]ll documents relating to the drafting, preparation, enactment, or passage of Senate Bill 2289." (Exhibit A at p. 48).  The Manufacturers' First Discovery Requests define "Senate Bill 2289" as follows:

> The term "Senate Bill 2289" means "AN ACT to amend and reenact sections 51-07-01.2, 51-07-02.2, and 51-26-06 of the North Dakota Century Code, relating to prohibited practices under farm equipment dealership contracts, dealership transfers, and reimbursement for warranty repair," a copy of which is attached as Exhibit A to the Complaint.

(Exhibit A at pp. 7-8).  The time period covered by Document Request No. 4 was specified by the following instruction in the Manufacturers' First Discovery Requests:  "Unless stated otherwise, Manufacturers' First Discovery Requests relate to the period commencing January 1, 2015 and continuing through the date of trial."  (*Id.* at p. 11).

Five days after serving these written discovery requests, the Manufacturers served a deposition notice for NDIDA's President and CEO, Mr. Larsgaard.  This deposition took place on March 8, 2018.  After serving their written discovery requests, the Manufacturers later agreed to a request for an extension of time for the State and NDIDA to respond.  On February 23, 2018, the State and NDIDA served their responses and objections to the Manufacturers' First Discovery Requests.  The State responded to Request No. 4's request for documents about the "drafting, preparation, enactment, or passage of Senate Bill 2289" as follows: "The State has no documents responsive to this request other than which is already publicly-available."  (Exhibit B at p. 57).  NDIDA claimed that any responsive documents it might have were "covered under attorney-client privilege" or "protected from disclosure as attorney work-product documents," as follows:

> NDIDA objects to this Request because it implicates documents that are covered under attorney-client privilege.  Further, NDIDA objects to this Request because it also implicates documents protected from disclosure as attorney work-product.  Otherwise, NDIDA has no other documents responsive to this Request. NDIDA will produce and appropriate privilege log.

(*Id.*).

On March 8, 2018, the Manufacturers deposed Mr. Larsgaard.  During that deposition, the Manufacturers asked Mr. Larsgaard a number of questions about the drafting, preparation, enactment, and passage of Senate Bill 2289—*i.e.*, the subject matter of Request No. 4.  NDIDA's attorney, however, objected based on a previously undisclosed "First Amendment Privilege,"

which he described as a "privilege which allows an association to deliberate and strategize about proposed legislation." *See* Exhibit C (Larsgaard Tr.) 51:13-51:24. NDIDA's attorney thus instructed Mr. Larsgaard not to answer any questions which might "impede on any internal discussions regarding SB2289." (*Id.* at 51:25-52:2). Heeding these instructions, NDIDA's President and CEO refused to answer the following questions, in whole or in part, on First Amendment grounds:

- "You contacted a law firm to assist you. How did you pick that law firm?" (Exhibit C at 51:8-52:23).

- "Was there any document that you drafted before you talked to a lawyer that had your first stab at what 2289, what would become 2289?" (*Id.* at 54:13-54:22).

- "Setting – and I'm going to talk before you engaged Mr. Allen's law firm [NDIDA's counsel] to help with you 2289 [sic], had you discussed proposed language with anyone who was not an attorney before you – before that?" (*Id.* at 61:6-61:18).

- "Was specific language ever discussed at any NDIDA board meetings before you retained Mr. Allen?" (*Id.* at 62:6-62:10).

- "Prior to that point in time [the introduction of the bill] did you tell any the members of NDIDA that you were drafting that legislation?" (*Id.* at 76:15-76:2).

- "Did the board ask you or empower you or order you to – to have this election [to authorize pursuing legislation] before you could move forward?" (*Id.* at 78:24-79:5).

- "Did you send around an e-mail explaining what was potentially going to be in the bill?" (*Id.* at 79:23-80:5).

- "Did any individuals condition their support of 2289 on the exclusion or inclusion of any certain terms?" (*Id.* at 82:14-83:9).

- "Did you direct or assist any of your members in lobbying any members of the committee or committees or State legislators in connection with 2289?"  (*Id.* at 140:9-140:19).

- "Was there an advantage, do you think, strategically of – of NDIDA deciding to seek new legislation through 2289 as opposed to challenging the onerous, the provisions you've described as onerous in the new Case IH contract in a lawsuit?"  *Id.* at 169:22-170:12.

On March 23, 2018, exactly one week before the close of fact discovery, the State and NDIDA served Amended Responses to the Manufacturers' First Discovery Requests (Exhibit D) (the "Amended Responses").  The changes that the Amended Response to Document Request No. 4 (*see* Exhibit D at p. 7) made to what the State and NDIDA had served a month earlier, on February 23, 2018, are shown below (with additions in blue underlining and ~~deletions in red strike-through~~):

> The State has no documents responsive to this request other than which is already publicly-available.  NDIDA objects to this Request because it implicates documents that are covered under attorney-client privilege.  Further, NDIDA objects to this Request because it also implicates documents protected from disclosure as attorney work-product.  NDIDA also objects because this request implicates documents protected from disclosure under it and its members' First Amendment Privilege to engage in political activities as free speech and to not have such activities or speech chilled or otherwise used against them. Finally, the State and NDIDA interprets [sic] the above request to only reference those documents relating to the above that post-date the introduction of SB 2289. Further, the North Dakota Legislature, not NDIDA, drafts and prepares legislation, including SB 2289. Without waiving those objections above, NDIDA states that at the time of its initial response, investigation for potentially-responsive documents was ongoing and none had been found. As the investigation has continued, responsive documents have been discovered and those non-privileged, responsive documents will be provided. Otherwise, NDIDA ~~has no other documents responsive to this Request. NDIDA~~ will produce an appropriate privilege log.

The foregoing March 23, 2018 objections and responses disclosed for the very first time that

NDIDA was "interpret[ing]" Request No. 4 as being limited in scope to documents "that post-date the introduction of SB 2289" and that—with respect to documents "that post-date the introduction of SB 2289"—NDIDA was asserting a "First Amendment Privilege." Before March 23, 2018, NDIDA had not revealed the existence of these two categories of documents that were being withheld.

On the evening of March 28, 2018, NDIDA served its only production of documents in response to Request No. 4. Along with this production, NDIDA also served a "key" for those documents as well as a privilege log. The "key" (attached as Exhibit E) identified the following twelve documents (a total of 35 pages) responsive to Request No. 4 that NDIDA produced:

| Bates Number | Title/Description of Document | Source |
|---|---|---|
| NDIDA0008-0009 | "2017 NDIDA Legislative Victory!!" | Publicly available, attached to Complaint as Dkt. # 1-7. |
| NDIDA0012-0017 | 1/27/17 Matthew Larsgaard Testimony before Senate Agriculture | Publicly available, Dkt. # 67-1 at 50. |
| NDIDA0018-0019 | "Support Senate Bill 2289" (2/2/17) | NDIDA |
| NDIDA0020-0021 | "Support Senate Bill 2289" (1/31/17) | NDIDA |
| NDIDA0022-0023 | "Farm Equipment Manufacturers Association Position on SB-2289," Vernon Schmidt to Dennis Johnson 3/8/17 | NDIDA |
| NDIDA0024 | "SB 2289: Equipment Dealer Agreements," John Deere. | Prepared by Deere & Co. |
| NDIDA0025-0026 | "SB 2289: Farm Equipment Dealer Agreements," John Deere. | Prepared by Deere & Co. |
| NDIDA0027 | Summers Mfg. Co. Letter | NDIDA |
| NDIDA0028-34 | Senate Bill No. 2289 | Publicly available, attached to Complaint as Dkt. # 1-3. |
| NDIDA0035-0040 | 2/23/17 Matthew Larsgaard Testimony before House Agriculture | Publicly available, Dkt. # 67-1 at 83. |
| NDIDA0041-0042 | "Senate Bill 2289 Becomes State Law on 8/1/17" | Publicly available, Dkt. # 67-1 at 89. |
| NDIDA0043-0044 | "NDIDA Farm Equipment Dealer Protection Bill Becomes Law Effective August 1, 2017" | Publicly available, attached to Complaint as Dkt. # 1-4. |

Of the 35 pages of materials that NDIDA actually produced in response to Request No. 4, eleven

pages had already been attached as exhibits to the Complaint, and 17 pages were either publicly available or prepared by a Manufacturer.  NDIDA therefore produced only **seven pages** of unique, relevant documents—most of which addressed the fact that Senate Bill 2289 had the purpose of leveling the playing field.[1]

Meanwhile, NDIDA also provided a "privilege log" identifying the documents that NDIDA had identified as responsive to Request No. 4 but withheld from production.  (Exhibit F).  Contrary to NDIDA's repeated representations that it has "documents that are covered under attorney-client privilege . . . [and] documents protected from disclosure as attorney work-product,"[2] NDIDA's privilege log identified no documents that had been withheld on those grounds.  Rather, all of the documents identified on the privilege log were withheld on First Amendment Privilege grounds.  The withheld documents range in date from January 26, 2017 to May 24, 2017, and appear to include communications—including mass emails—from or on behalf of Mr. Larsgaard to NDIDA members.  The titles of these documents include "NDIDA Dealer Rights Bill – SB 2289," "NDIDA's Farm Equipment Bill is on it's [sic] way to the Governor!" and "NDIDA Farm Equipment Protection Bill Passes 46-0!"  (Exhibit F at p. 2).

On April 3, 2018, after the completion of five depositions taken by NDIDA the week before, counsel for Manufacturers sent counsel for NDIDA correspondence objecting to NDIDA's assertion of a First Amendment Privilege.  On April 5, 2018, counsel for the Manufacturers sent a follow-up letter objecting to NDIDA's belated reinterpretation of Request No. 4 to pertain only to documents "that post-date the introduction" of Senate Bill 2289.

---

[1] *See, e.g.*, NDIDA0018 ("Senate Bill 2289 . . . [a]ddresses contract issues where unfair and unreasonable manufacturer demands have placed dealers at a distinct disadvantage with no recourse or ability to negotiate."); NDIDA0020 (same); NDIDA0019 ("Senate Bill 2289 . . . [p]rotects dealers"); NDIDA0021 (same).

[2] *See* Exhibit B at p. 57 and Exhibit D at p. 7.

Counsel for the parties met and conferred about these matters by telephone on April 9, 2018. Counsel for the Manufacturers sent additional correspondence addressing these issues to NDIDA's counsel on April 11, 2018. Counsel for NDIDA responded with correspondence dated April 13, 2018, standing by its assertion of a First Amendment Privilege and its reinterpretation of Request No. 4. Having reached an impasse, counsel for the parties convened a Local Civil Rule 37.1 telephone conference with the Magistrate Judge on April 19, 2018. That did not resolve the disputes, prompting the filing of this motion.

<h3 style="text-align:center">III.     ARGUMENT</h3>

**A.    NDIDA Has Withheld "Critical" Information and Evidence About Senate Bill 2289's Drafting, Preparation, Enactment, and Passage.**

NDIDA sought and obtained the right to intervene in this litigation based on the representation that, having "helped draft" Senate Bill 2289, "NDIDA has first-hand knowledge of the purpose of the bill and other evidence" that "is critical to showing that the bill does not violate the Lanham Act, the Robinson-Patman Act, or the Constitution." (Dkt. # 32-1). The documents that NDIDA has refused to produce and the deposition questions that NDIDA has refused to permit are directed at the critical information and evidence that NDIDA admittedly has. NDIDA's belated "interpretation" of Request No. 4 to exclude documents that predate Senate Bill 2289's introduction is improper.

Request No. 4 is clear. It seeks relevant and important documents that formed the basis of NDIDA's involvement in this litigation in the first place. Information about the drafting, preparation, enactment, and passage of Senate Bill 2289 goes to the heart of the Manufacturers' claims and the defenses that have been asserted by the State and NDIDA.

The documents that NDIDA has refused to produce and the deposition questions that NDIDA has refused to permit are not legitimately the subject of a claimed "First Amendment

9

Privilege." Even in those courts that have recognized such a privilege—which do not include the Eighth Circuit—its scope is much narrower than that which NDIDA now claims. In addition, NDIDA has not shown—and will not be able to show—that this rarely-applied privilege covers a farm equipment dealership trade association's documents or communications. Indeed, another district court recently rejected a similar privilege claim in the context of a challenge to a state dealership statute.

Even if NDIDA had any legitimate basis for its claimed "First Amendment Privilege," such a privilege—like work product immunity—would not be an absolute bar to the production of documents responsive to Request No. 4. It can be overcome upon a showing of need. Here, the Manufacturers have an overwhelming need for the documents. The Court therefore should compel NDIDA's compliance with the Manufacturers' reasonable and proper discovery requests.

**B.      NDIDA Has Not Asserted Either a Timely or a Legitimate Objection to Producing Documents Responsive to the Manufacturers' Request No. 4.**

**1.      Request No. 4 is not limited in scope to documents that post-date Senate Bill 2289's introduction in the North Dakota legislature.**

On its face, Request No. 4 seeks documents during the period from January 1, 2015 to present. With only a week left in discovery, NDIDA reinterpreted Request No. 4 to pertain only to "documents . . . that post-date the introduction of SB 2289." (Exhibit D at p. 7). This reinterpretation defies credulity. NDIDA did not interpret Request No. 4 to be limited in time until the eleventh hour, and nothing on the face of Request No. 4 supports the temporal limitation that NDIDA now assigns to it. Quite to the contrary, Request No. 4 is governed by a general instruction that "Unless stated otherwise, Manufacturers' First Discovery Requests relate to the period commencing January 1, 2015 and continuing through the date of trial." (Exhibit A at p. 11). Therefore, NDIDA's eleventh-hour reinterpretation of Request No. 4 fails on its face.

Based on discussions with counsel for NDIDA, the Manufacturers understand NDIDA's

10

objection to producing documents that pre-date the introduction of Senate Bill 2289 to be based on a general sense that such documents are unlikely to be relevant.  As an initial matter, NDIDA has never objected that Request No. 4 is irrelevant insofar as it pertains to documents that pre-date the introduction of Senate Bill 2289.  *See* Amended Responses (Exhibit D) at 7.  Therefore, any relevance objection is waived.  Fed. R. Civ. P. 34(b)(2)(b); *Cargill, Inc. v. Ron Burge Trucking, Inc.*, 284 F.R.D. 421, 424 (D. Minn. 2012).  However, the materials sought by Request No. 4 are plainly relevant.  In fact, NDIDA has already admitted as much.

### 2.     The discovery sought is relevant to the Manufacturers' claims and to the defenses raised by both the State and NDIDA.

Pursuant to Federal Rule of Civil Procedure 26(b)(1), the Manufacturers are entitled to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  *Weatherford U.S., L.P. v. Chance Innis & Noble Casing, Inc.*, 2011 U.S. Dist. LEXIS 59036, Case No. 4:09-cv-061 (D.N.D. June 2, 2011).  Here, the crux of the Manufacturers' Contract Clause claim is that Senate Bill 2289 substantially impairs the Manufacturers' agreements with North Dakota farm equipment dealers and that the impairment has no significant or legitimate public purpose.  The Court has preliminarily found—and the Manufacturers intend to prove on summary judgment or at trial—that Senate Bill 2289 was intended as special-interest legislation, meant to "level the playing field" for the benefit of farm equipment dealers.  Such a legislative purpose is *per se* improper under the Contract Clause, and thus would prove the sixth and seventh counts set forth in the Manufacturers' Complaint[3].  *Equipment Manufacturers Institute v. Janklow*, 300 F.3d 842, 860-61 (8th Cir. 2002).   The primary defense to this argument asserted by the State and NDIDA is that Senate Bill 2289 had a proper purpose:  to protect farmers and the overall North Dakota economy.  *See, e.g.*, Dkt. # 68

---

[3] *See* Dkt. # 1 ¶¶ 217-225.

at pp. 13-20.

It is undisputed that NDIDA played a role in drafting Senate Bill 2289.  *See* Dkt. # 32-1 at p. 10; Dkt. # 32-3 ¶ 5.  Request No. 4 thus seeks information about NDIDA's drafting and lobbying efforts.  These topics are directly relevant to a dispositive issue in this case.  If NDIDA's internal documents show that NDIDA drafted Senate Bill 2289 for the singular purpose of benefitting NDIDA's members rather than promoting broader purposes, this evidence would tend to show that Senate Bill 2289 is improper under the Contract Clause.  Thus, the seven pages of unique, non-public documents that NDIDA has actually produced in response to Request No. 4 include highly probative documents directly tending to prove that Senate Bill 2289 was in fact prepared for improper, level-the-playing-field purposes.[4]

### 3.    NDIDA's log confirms both the relevance and importance of the responsive documents that NDIDA has withheld.

NDIDA's log underscores that NDIDA's internal deliberations about Senate Bill 2289 are probative of the underlying purpose of Senate Bill 2289.  Just the titles of the twenty-three documents listed on NDIDA's privilege log include the phrases "NDIDA Dealer Rights Bill," "NDIDA's Farm Equipment Bill," and "NDIDA Farm Equipment Protection Bill."  (Exhibit F at p. 2).  The fact that NDIDA evidently described Senate Bill 2289 as a "Farm Equipment Protection Bill" is probative of the law's purpose.  *See generally Kosak v. United States*, 465 U.S. 848, 857 n.13 (1984) ("[I]t seems to us senseless to ignore entirely the views of [a law's] draftsman."); *SDDS, Inc. v. South Dakota*, 47 F.3d 263, 268 (8th Cir. 1995) (crediting as "direct evidence of a discriminatory purpose" certain protectionist rhetoric contained in a pamphlet that

---

[4] *See, e.g.*, NDIDA0018 ("Senate Bill 2289 . . . [a]ddresses contract issues where unfair and unreasonable manufacturer demands have placed dealers at a distinct disadvantage with no recourse or ability to negotiate."); NDIDA0020 (same); NDIDA0019 ("Senate Bill 2289 . . . [p]rotects dealers"); NDIDA0021 (same).

accompanied a referendum notice").

In its Order preliminarily enjoining the enforcement of Senate Bill 2289, this Court credited NDIDA's press release describing Senate Bill 2289 as a "major farm equipment dealer protection bill" as indirect evidence of legislative intent. *See* Order (Dkt. # 70) at p. 18 (quoting Dkt. # 1-4). It therefore stands to reason that the Court might also find NDIDA documents describing Senate Bill 2289 as a "Dealer Rights Bill" or "Farm Equipment Protection Bill"—such as the documents that NDIDA has withheld from discovery—to be relevant here.

**4.** **NDIDA has acknowledged that the withheld documents are "critical" to resolution of the merits of this litigation.**

NDIDA itself has already acknowledged to this Court and to the parties that its internal documents about the drafting of Senate Bill 2289 are not only relevant but "critical." In the Memorandum of Law in Support of NDIDA's Motion to Intervene in this case, NDIDA said in no uncertain terms that:

> NDIDA also helped draft this bill, which means NDIDA has first-hand knowledge of the purpose of the bill and other evidence. ***This knowledge and evidence is critical to showing that the bill does not violate the Lanham Act, the Robinson-Patman Act, or the Constitution.***

(Dkt. # 32-1 at 10) (emphasis added). This statement is important for two reasons. First, it is an admission that NDIDA's internal documents about the drafting of Senate Bill 2289 are not only relevant, but material, to the ultimate merits in this litigation. Second, and more importantly, NDIDA's representation was an implied promise to the Court and to the parties that, by making NDIDA a party to this case, NDIDA would cooperatively produce these materials in discovery. This representation played no small role in the Manufacturers' decision not to oppose NDIDA's motion to intervene as a party in this case. It would be manifestly unjust to allow NDIDA to avoid its obligations as a party to produce material documents that were properly requested in

discovery, just because NDIDA later changed its mind.

C.   **NDIDA's Claimed "First Amendment Privilege" Does Not Permit
     NDIDA to Refuse to Provide Relevant Documents or Testimony.**

In addition to implausibly reinterpreting the temporal scope of Request No. 4, NDIDA's

March 23, 2018 Amended Responses also assert a "First Amendment Privilege to engage in

political activities as free speech and to not have such activities or speech chilled or otherwise

used against them." *See* Amended Responses (Exhibit D) at p. 7.  NDIDA also asserted the same

objection in a deposition, refusing to answer nearly a dozen questions on those same grounds.

The First Amendment Privilege is rarely asserted, and it is even more rarely sustained.  In

fact, the Manufacturers are not aware of a single case in this Circuit that would support

NDIDA's assertion of a First Amendment Privilege here.

1.   **NDIDA has not met its burden of showing that its claim of the
     "First Amendment Privilege" applies to the withheld discovery.**

NDIDA has the burden of showing that its claimed First Amendment Privilege applies.

"[T]he parties asserting the privilege must make a prima facie showing that the privilege

applies."  *In re Motor Fuel Temperature Sales Practices Litig.*, 707 F. Supp. 2d 1145, 1153 (D.

Kan. Mar. 4, 2010).

> To make this showing, defendants must demonstrate an objectively
> reasonable probability that compelled disclosure will chill
> associational rights, *i.e.*, that disclosure will deter membership due
> to fear of threats, harassment or reprisal from either government
> officials or private parties which may affect members' physical
> well-being, political activities or economic interests.

*Id.* (citations omitted).  Like any privilege against discovery or testimony, the First Amendment

Privilege "must be strictly construed and accepted only to the very limited extent that permitting

a refusal to testify or excluding relevant evidence has a public good transcending the normally

predominant principle of utilizing all rational means for ascertaining truth."  *Trammel v. United*

*States*, 445 U.S. 40, 50 (1980) (quotation omitted).

Here, NDIDA has withheld documents "relating to the drafting, preparation, enactment, or passage of Senate Bill 2289." (Exhibit A at p. 48). NDIDA's President and CEO refused to answer, in whole or in part, nearly a dozen questions about the drafting of Senate Bill 2289. These included questions about NDIDA's internal deliberations about pursuing legislation, what language to use in the bill, and whether to lobby any members of the legislature. *See* Exhibit C at 54:13-54:22; 61:6-61:18; 62:6-62:10; 76:15-76:2; 79:23-80:5; 82:14-83:9; and 140:9-140:19. The case law is clear that "internal trade association communications with regard to legislative and lobbying" matters are ***not*** presumptively privileged. *In re Motor Fuel*, 707 F. Supp. 2d at 1155. The burden is therefore on NDIDA to establish that disclosure of these documents and information "would create an objectively reasonable probability of chill on First Amendment rights." *Id.* at 1157 (citing *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010)).

NDIDA has not carried this heavy burden. To date, NDIDA's only explanation for its invocation of a First Amendment Privilege is its objection that disclosure of the documents sought by Request No. 4 might impinge on "its members' First Amendment Privilege to engage in political activities as free speech and to not have such activities or speech chilled or otherwise used against them." *See* Amended Responses (Exhibit D) at 7. This conclusory statement simply begs the question, and it is insufficient to establish that the First Amendment Privilege applies.

While a "dissident organization . . . such as the Ku Klux Klan [or] Black Panthers" might be able to rely on a presumption that its confidential membership and donor lists are subject to protection, NDIDA cannot. *Aldapa v. Fowler Packing Co.*, 2016 U.S. Dist. LEXIS 78791, at *5, No. 1:15-cv-00420-DAD-SAB, *5 (E.D. Cal. June 16, 2016); *see generally NAACP v. Alabama*

ex rel. *Patterson*, 357 U.S. 449, 462 (1958) (preventing disclosure of names of "rank and file" members of the NAACP in Alabama in the 1950s). To the contrary, the evidence in the record is that NDIDA is a trade association with approximately 115 farm equipment dealer members. (Dkt. 32-3 ¶ 2). NDIDA's members thus are not political dissidents. They are businesses open to the public that are well known in North Dakota by virtue of their association with various equipment suppliers, including the Manufacturers. The identity of the dealers that advocated for enactment of Senate Bill 2289 is already a matter of public record. There is no reason to suggest that the mere disclosure of their names and communications about Senate Bill 2289 would cause these dealers to fear "threats, harassment or reprisal from either government officials or private parties." *In re Motor Fuel*, 707 F. Supp. 2d at 1153.

Of the 23 documents identified in NDIDA's privilege log, 19 are communications or memoranda that were prepared by Matthew Larsgaard, NDIDA's President and CEO. It strains credulity for NDIDA to argue that the disclosure of Mr. Larsgaard's efforts in support of Senate Bill 2289 would chill his or his members' First Amendment rights. Mr. Larsgaard has already repeatedly and publicly testified in support of Senate Bill 2289 before the North Dakota legislature,[5] submitted two affidavits to this Court about the lobbying and lawmaking processes behind Senate Bill 2289,[6] and testified to this Court about the perceived merits of Senate Bill 2289.[7] Additionally, two of the documents on NDIDA's privilege log are communications to NDIDA's board of directors—individuals whose names, companies, business addresses, and phone and fax numbers are publicly available on NDIDA's own website.[8]

---

[5] Dkt. # 68-1 at pp. 2-4, 27, 29-32, 50-54, 83-88.

[6] Dkt. ## 32-3, 46-1.

[7] Dkt. # 66 at 110:9-151:1.

[8] NDIDA Officers and Directors, *available at* http://www.ndida.com/ndida/about/officers.php.

Notably, in a case from within this Circuit, a court found that a pharmaceutical trade association alleged to have caused infant brain damage could not prove that its associational rights would be chilled by disclosing its internal communications. *Johnson v. Mead Johnson & Company, LLC*, 2012 WL 12894473, at *4, Civ. No. 11-225 (D. Minn. May 21, 2012).  The court determined that, without a showing of "harassment and intimidation of [the group's] known members and the resulting reluctance of people sympathetic to the goals of [the group] to associate with [it] for fear of reprisals," or a showing that disclosure of the discovery would lead to "loss of employment, threat of physical coercion, and other manifestations of public hostility," the trade association could not prove a prima facie case for the privilege. *Id.* at *4.

Similarly, a recent decision by the United States District Court for the Western District of Michigan is highly analogous to the situation here. *Tesla Motors, Inc. v. Johnson*, Case No. 1:16-cv-1158 (W.D.Mich. Dec. 11, 2017) (Order attached as Exhibit G).  Like the Manufacturers in this case, the plaintiff in *Tesla Motors* is challenging the constitutionality of a Michigan dealer statute.  Like the pre-existing farm equipment dealer statute at issue in this case, the Michigan dealer statute (governing relations with automobile dealers) was recently amended at the behest of a state dealer association.  As part of its challenge to the Michigan statute, Tesla served subpoenas on several non-party automobile dealers seeking documents relating to those dealers' efforts to draft the legislation at issue in that case.  Finding that documents about dealer efforts to draft legislation were "directly and highly relevant to Tesla's claims," the district court compelled disclosure of these documents over the dealers' First Amendment objections.  The court found that the dealers "are not merely 'bystanders' in this case, given evidence that the automobile dealers themselves drafted the [statute at issue]." (Exhibit G at p. 10).  Particularly relevant here, the court contrasted the dealers' political interests, "which are essentially

commercial interests," from "the highly volatile nature of the interests" at stake in cases involving individual views on controversial social issues, where the First Amendment Privilege is more typically applied. (*Id.* at 9).

Here, NDIDA has simply asserted a First Amendment Privilege without providing any facts to back it up. This does not suffice. "Absent a more specific explanation of the consequences of compliance with discovery," such as showing that disclosure of the communications would discourage potential members from joining the organization for fear of government retaliation, NDIDA has "failed to make the required initial showing of potential First Amendment infringement." *Johnson*, 2012 WL 12894473, at *4 (quoting *New York State NOW v. Terry*, 886 F.2d 1339, 1355 (2d Cir. 1989)). Simply put, NDIDA has not met its burden of showing an entitlement to First Amendment protection, nor is such a showing plausible.

### 2.   **The Manufacturers have a compelling need for the information that NDIDA now claims is protected by a "First Amendment Privilege".**

Even if NDIDA could make a prima facie showing that it is entitled to a First Amendment Privilege, the analysis would not end there. Rather, the burden would then shift to the Manufacturers to demonstrate a compelling need for the requested information. The Manufacturers would easily meet this burden.

To determine whether the Manufacturers have a compelling need for the information, this Court should consider five factors: (1) the relevance of the information sought; (2) the Manufacturers' need for the information; (3) whether the information is available from other sources; (4) the nature of the information sought; and (5) whether NDIDA has placed the information at issue. *In re Motor Fuel*, 707 F. Supp. 2d at 1161. The determination ultimately comes down to "whether the privilege must be overborne by the need for the requested information." *Id.*

With respect to the first factor, the information that the Manufacturers seek is certainly relevant.  Indeed, NDIDA itself has described the information as "critical."  With respect to the second factor, the Manufacturers have established a need for the documents in view of the fact that the Court has already cited an NDIDA document as indirect evidence of legislative intent. (Dkt. # 70 at p. 18).  With respect to the third factor, NDIDA is the only source of the information that the Manufacturers seek.  Again, this was among the reasons that NDIDA was permitted to intervene in the first place.  With respect to the fourth factor, the Manufacturers do not seek protected membership lists or donor information.  Rather, they simply seek information that would get to the heart of the issues in this case.  Finally, with respect to the fifth factor, NDIDA has squarely placed the information that the Manufacturers seek at issue by intervening in this case on the premise that it has "critical" information to produce regarding the origins of Senate Bill 2289.  Thus, even if NDIDA could make a prima facie case for the First Amendment Privilege, the Manufacturers' need for the information—in light of the five factors above— would significantly outweigh any claims for protection.

### 3.   NDIDA's fears of chilling First Amendment activities are allayed by the Stipulated Protective Order that this Court has already entered.

To the extent that NDIDA may have any bona fide fears of subjecting it or its members to "threats, harassment or reprisal from either government officials or private parties,"[9] these fears are allayed by the Stipulated Protective Order that is already in place.  The Stipulated Protective Order allows NDIDA to designate any documents or deposition testimony that "could reasonably cause injury to any Party or third party" as "CONFIDENTIAL"—thereby ensuring that the information is used only in connection with this litigation and specifically preventing its disclosure to any persons who could plausibly cause retaliate against NDIDA or its members.

---

[9] *In re Motor Fuel*, 707 F. Supp. 2d at 1153.

(Dkt. # 78 ¶¶ 4-6).  This Stipulated Protective Order cures any possible concerns that NDIDA may plausibly have about disclosing relevant information.

## IV.      <u>PRAYER FOR RELIEF</u>

The Manufacturers respectfully request that this Court enter an Order compelling NDIDA to produce ***any*** documents it has in its possession, custody, or control that relate to the drafting, preparation, enactment, or passage of Senate Bill 2289, including documents from before Senate Bill 2289's formal introduction to the legislature.  The Manufacturers also respectfully request that this Court enter an Order compelling NDIDA to produce the 23 documents for which NDIDA has asserted an unmeritorious First Amendment Privilege.  Finally, the Manufacturers respectfully request that this Court enter an Order compelling NDIDA to make its President and Chief Executive Officer available for a supplemental deposition—not to exceed one hour in length—to answer the questions to which NDIDA improperly asserted a First Amendment Privilege, and any other follow-up questions that arise from the answers to these questions.

Dated:  April 27, 2018                    Respectfully submitted,

                                          ASSOCIATION OF EQUIPMENT MANUFACTURERS,
                                          AGCO CORPORATION,
                                          CNH INDUSTRIAL AMERICA LLC,
                                          DEERE & COMPANY, and
                                          KUBOTA TRACTOR CORPORATION

                                          By:    /s/ Michael J. Lockerby

                                                 Timothy Q. Purdon (ND Bar #05392)
                                                 ROBINS KAPLAN LLP
                                                 1207 West Divide Avenue, Suite 200
                                                 Bismarck, North Dakota 58503
                                                 (701) 255-3000

                                                 Katherine S. Barrett Wiik
                                                 ROBINS KAPLAN LLP
                                                 800 LaSalle Avenue, Suite 2800
                                                 Minneapolis, Minnesota 55402
                                                 (612) 349-8500

                                                 Michael J. Lockerby (admitted *pro hac vice*)
                                                 Benjamin R. Dryden (admitted *pro hac vice*)
                                                 Jarren N. Ginsburg (admitted *pro hac vice*)
                                                 FOLEY & LARDNER LLP
                                                 Washington Harbour
                                                 3000 K Street, NW, Sixth Floor
                                                 Washington, D.C. 20007
                                                 (202) 672-5300

                                                 Connor A. Sabatino (admitted *pro hac vice*)
                                                 FOLEY & LARDNER LLP
                                                 Verex Plaza
                                                 150 East Gilman Street
                                                 Madison, Wisconsin 53703
                                                 (608) 258-4273

                                                 *Counsel for Plaintiffs,*
                                                 *Association of Equipment Manufacturers,*
                                                 *AGCO Corporation, CNH Industrial America LLC,*
                                                 *Deere & Company, and Kubota Tractor Corporation*

21