## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Association of Equipment Manufacturers, AGCO Corporation, CNH Industrial America LLC, Deere & Company, and Kubota Tractor Corporation, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | **ORDER GRANTING MOTION TO COMPEL DISCOVERY** |
| vs. | ) ) | |
| The Hon. Doug Burgum, Governor of the State of North Dakota, in his official capacity, and | ) ) ) ) | |
| The Hon. Wayne Stenehjem, Attorney General of the State of North Dakota, in his official capacity, | ) ) ) | Case No. 1:17-cv-151 |
| Defendants, | ) ) ) | |
| North Dakota Implement Dealers Association, | ) ) ) | |
| Intervenor-Defendant. | ) ) | |

Before the Court is plaintiffs' motion to compel discovery in which they seek an order compelling intervenor-defendant North Dakota Implement Dealers Association ("NDIDA") to:

1.    fully respond to plaintiffs' Document Request No. 4; and

2.    require its President and CEO to sit for a supplemental deposition to cover the topics that were objected to during his deposition on First Amendment associational privilege grounds.

NDIDA opposes the motion on several grounds.

## I.      BACKGROUND

Plaintiffs AGCO Corporation, CNH Industrial America, Deere & Company, and Kubota Tractor Corporation are manufacturers of farm equipment.  Plaintiff Association of Equipment Manufacturers is a not-for-profit trade association that represents and promotes the legal and business interests of its 900-plus members, including the plaintiff manufacturers in this case.

Defendant Doug Burgum is the Governor of the State of North Dakota and defendant Wayne Stenehjem its Attorney General (collectively the "State").  Intervenor-defendant NDIDA is a trade association for approximately 115 franchised North Dakota farm equipment dealers.

In this action, plaintiffs seek to enjoin the enforcement of amendments enacted by the North Dakota Legislature in 2017 to N.D.C.C. chapters 51-07 and 51-26[1] by 2017 N.D. Sess. Laws Ch. 354 (Senate Bill 2289) entitled "AN ACT to amend and reenact sections 51-07-01.2, 51-07-02.2, and 51-26-06 of the North Dakota Century Code, relating to prohibited practices under farm equipment dealership contracts, dealership transfers, and reimbursement for warranty repair."  Plaintiffs contend the enacted amendments (hereinafter "SB 2289") violate (1) the Contracts Clause of the United States Constitution, U.S. Const. art. I, § 10; (2) the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq.; (3) the federal trademark statute, 15 U.S.C. § 1051 et seq. (the Lanham Act); (4) the Commerce Clause of the United States Constitution, U.S. Const. art. I, § 8, cl. 3; and (5) interstate price regulation provisions found at 15 U.S.C. § 13 et seq. (the Robinson-Patman Act).

On December 14, 2017, Chief Judge Hovland entered an order preliminarily enjoining enforcement of SB 2289.  <u>Association of Equipment Manufacturers v. Burgum</u>, No. 1:17-cv-

---

[1]  N.D.C.C. ch. 51-07 contains provisions that, among other things, regulate the relationships between manufacturers and dealers of automobiles, trucks, lawn and garden equipment, and farm equipment—some to a greater degree than others.  Ch. 51-26 governs farm equipment warranties and handling of warranty repair work.

151, 2017 WL 8791104 (D.N.D. Dec. 17, 2017) ("Ass'n Equip. Mfgs."). Defendants have appealed the order. Following the filing of the appeal, defendants moved this court to stay discovery and all other proceedings pending its outcome. Chief Judge Hovland denied that motion on March 3, 2018. Ass'n Equip. Mfgs., 2018 WL 1773145 (Mar. 5, 2018).

It is undisputed that the original drafter of virtually all of what was introduced as SB 2289 was a law firm specializing in manufacturer-dealer law retained by NDIDA prior to the beginning of the 2017 legislative session. It is also undisputed that, at the beginning of the 2017 legislative session, NDIDA solicited members of both the North Dakota Senate and House to sponsor a bill based on the draft legislation that its law firm had prepared. Finally, from the record now before the court, it is clear NDIDA led an intensive lobbying effort to get SB 2289 passed.

It was within this context that plaintiffs served defendants with a limited number of document requests pursuant to Fed R. Civ. P. 34. The predicate instructions to plaintiffs' document requests stated they were seeking responsive documents from January 1, 2015, through the date of the trial and defined SB 2289 by its official name, *i.e.*, "AN ACT to amend and reenact sections 51-07-01.2, 51-07-02.2, and 51-26-06 of the North Dakota Century Code, relating to prohibited practices under farm equipment dealership contracts, dealership transfers, and reimbursement for warranty repair."

The State and NDIDA filed a joint response to plaintiffs' document requests. In this action, they are represented by the same law firm—the firm retained by NDIDA to draft what was introduced as SB 2289. Relevant here is defendants' response to Document Request No. 4.

> **Document Request No. 4:** All documents relating to the drafting, preparation, enactment, or passage of Senate Bill 2289.

**Response: Objection**. The State has no documents responsive to this request other than which is already publicly-available. NDIDA objects to this Request because it implicates documents that are covered under attorney-client privilege. Further, NDIDA objects to this Request because it also implicates documents protected from disclosure as attorney workproduct. Otherwise, NDIDA has no other documents responsive to this Request. NDIDA will produce an appropriate privilege log.

On March 23, 2018, exactly one week prior to the expiration of the March 30, 2018 deadline for completing discovery under the court's progression order and after plaintiffs had deposed NDIDA's President and CEO, defendants served by email an amended response to Document Request No. 4 as follows:

**Amended Response: Objection.** The State has no documents responsive to this request other than which is already publicly-available. NDIDA objects to this Request because it implicates documents that are covered under attorney-client privilege. Further, NDIDA objects to this Request because it also implicates documents protected from disclosure as attorney workproduct. NDIDA also objects because this request implicates documents protected from disclosure under it and its members' First Amendment Privilege to engage in political activities as free speech and to not have such activities or speech chilled or otherwise used against them. Finally, the State and NDIDA interprets the above request to only reference those documents relating to the above that post-date the introduction of SB 2289. Further, the North Dakota Legislature, not NDIDA, drafts and prepares legislation, including SB 2289. Without waiving those objections above, NDIDA states that at the time of its initial response, investigation for potentially-responsive documents was ongoing and none had been found. As the investigation has continued, responsive documents have been discovered and those non-privileged, responsive documents will be provided. Otherwise, NDIDA will produce an appropriate privilege log.

Several days after the amended response and just prior to the expiration of the discovery deadline, defendants' counsel identified the responsive documents claimed to have been "discovered" since the initial response. Some of the documents were turned over to plaintiffs. A greater number were withheld on First Amendment associational privilege grounds and, for the first time, a privilege log of withheld documents was served on March 26, 2018.

Given this is not a fact-intensive or document-intensive case and nature of the "discovered documents" are such that would not have been stuck away in a drawer someplace and forgotten, NDIDA's initial search for responsive documents must not have been very

thorough. Further, it is difficult to believe that the existence of the "discovered documents" was not known to defendants' counsel at the time of the deposition of NDIDA's President and CEO.[2] A skeptic would conclude that defendants' counsel dumped the documents on plaintiffs at the last moment, hoping to run out the clock.

Then there is the disingenuous interpretation of Document Request No. 4 in the amended response—that being the most charitable characterization the court can give it. As reflected above, the amended response states that both the State and NDIDA read Request No. 4 as seeking only documents generated after the introduction of SB 2289, notwithstanding that it seeks documents related to its preparation and drafting. More on this later.

Finally, what is also curious about the initial and amended response to Document Request No. 4 are the documents that both responses state are not being produced by NDIDA based upon attorney-client and work-product privileges and for which it was represented beginning with the initial response that a privilege log would be forthcoming. The privilege log ultimately produced makes no mention of any documents withheld based upon these privileges. Does the continued reference to these privileges in the amended response mean there are documents postdating the introduction of SB 2289 that are being withheld on the grounds of attorney-client or work-product privileges even though they are not identified in the privilege log? Or, was the reference to these privileges in the initial response intended to cover communications between the NDIDA and its law firm with respect to the drafting of the legislation that ultimately was introduced as SB 2289 and, with a newly minted interpretation of

---

[2] If the documents were not discovered until after the deposition, defendants' counsel apparently did not do a very thorough job in preparing their client for his deposition assuming they did so.

Document Request No 4, the continued reference to these privileges in the amended response was a mistake?

## II. DISCUSSION

### A. Governing law

#### 1. The applicable Federal Rules of Civil Procedure

Rule 26(b)(1) of the Federal Rules of Civil Procedure addresses the scope of discovery in civil actions. Specifically, it provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within the scope of discovery need not be admissible in evidence to be discoverable.

See also Colonial Funding Network, Inc. v. Genuine Builders, Inc., 326 F.R.D. 206, 211 (D.S.D. 2018) ("The reason for the broad scope of discovery is that '[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession.' 8 Wright & Miller, § 2007, 39 (quoting Hickman v. Taylor, 329 U.S. 495, 507–08 (1947)"). "Discoverable information itself need not be admissible at trial; rather, the defining question is whether it is within the scope of discovery." Colonial Funding Network, 326 F.R.D. at 211 (citing Fed. R. Civ. P. 26(b)(1)).

Rule 26(b)(5)(A) provides that, when a party withholds information otherwise discoverable based on a claim of privilege, the party must (1) expressly make the claim, and (2) describe the withheld material in a manner that enables the other parties to assess the claim

without disclosing the privileged information. Typically, the latter is done by providing a privilege log.

Rule 37 of Federal Rules of Civil Procedure sets forth the recourse available to a party whose requests for discovery go unanswered or not fully responded to. Specifically, it provides that, "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). It further provides that "[i]f a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions." Fed. R. Civ. P. 37(a)(3)(A).

### 2.    The First Amendment associational privilege

"The First Amendment protects the freedom of political association as well as political expression." Buckley v. Valeo, 424 U.S. 1, 15 (1976); see also NAACP v. Alabama, 357 U.S. 449, 460 (1958) ("Effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association, as this Court has more than once recognized by remarking upon the close nexus between the freedoms of speech and assembly.").

Because disclosure of political affiliations and activities can have a chilling effect on First Amendment rights, the federal circuit courts that have addressed the issue (including the Eighth Circuit) have recognized a limited First Amendment associational privilege from discovery that unduly or unnecessarily infringes upon First Amendment rights. See, e.g., Perry v. Schwarzenegger, 591 F.3d 1147, 1159–61 (9th Cir. 2010); Grandbouche v. Clancy, 825 F.2d 1463, 1466–67 (10th Cir. 1987); Savola v. Webster, 644 F.2d 743, 746–47 (8th Cir. 1981).

B.    **NDIDA's objections to the motion to compel**

1.    **NDIDA's contention that the motion is untimely**

Given the history of NDIDA's delayed disclosures and its last minute claim of First Amendment privilege with respect to responsive documents not previously identified, NDIDA's contention that the motion to compel is untimely because it was filed after the close of discovery is specious and unworthy of more extended discussion.  Further, even if the motion is untimely, the court in the exercise of its substantial discretion will extend the period of discovery to the extent required for a complete and full response to Document Request No. 4 and a limited followup deposition of NDIDA's President and CEO.

2.    **NDIDA's claim that Document Request No. 4 only seeks documents generated after the introduction of SB 2289**

As already observed, NDIDA states in the amended response to Document Request No. 4 that both it and the State read the Request as applying only to documents generated after the introduction of SB 2289, which, apparently, was on January 18, 2017. This cribbed reading of Request No. 4 is at best unreasonable and borders upon bad faith given Request No. 4's reference to documents relating to the "drafting" and "preparation" of SB 2289 as well as the context of NDIDA's law firm being the principal drafter of what ultimately was included in the bill. To paraphrase Justice Breyer, SB 2289 did spring fully-grown "like Athena from the brow of Zeus." Home v. Flores, 557 U.S. 433, 498 (2009) (Breyer, J., dissenting).

Further, if the foregoing is not enough for the court to reach this conclusion, there is also what NDIDA's counsel proffered to the court in seeking leave for NDIDA's intervention as a party defendant.   In the memorandum in support of the motion for intervention, NDIDA's counsel represented:

*NDIDA also helped draft this bill* [SB 2289], which means NDIDA has firsthand knowledge of the purpose of the bill and other evidence. This knowledge and evidence is critical to showing that the bill does not violate the Lanham Act, the Robinson-Patman Act, or the Constitution.

(Doc. No. 32-1) (italics added).[3]

### 3. NDIDA's claim that any documents not part of the official legislative record are irrelevant

NDIDA contends that any documents outside of the official legislative record are not relevant. But this claim of irrelevancy—particularly as it extends to documents relating to the drafting of SB 2289—is contrary to what NDIDA represented to the court when it sought leave to intervene as a party defendant. For this reason alone, the court would overrule the objection for purposes of discovery.

Second, even if NDIDA should not be so estopped, the cases that NDIDA relies upon for its claim of irrelevancy primarily are ones where the issue was the meaning of the law that was passed. Even if the court was to accept the premise that in all instances material outside of the official legislative record is not worthy of consideration when ascertaining the meaning of legislation, the issue here is a different one, *i.e.*, whether SB 2289 was passed for a Constitutionally improper purpose.

When legislative purpose is an issue, the United States Supreme Court has stated with respect to challenges based upon violations of the First Amendment's Free Exercise [of Religion] Clause or Equal Protection:

In determining if the object of a law is a neutral one under the Free Exercise Clause, we can also find guidance in our equal protection cases. As Justice Harlan noted in the related context of the Establishment Clause, "[n]eutrality in its application requires an

---

[3] While the amended response represents that the disingenuous construction placed on Document Request No 4 is that of the State as well as NDIDA, the court very much doubts that this would have been the reading of Attorney General Stenehjem or any of his assistants.

9

equal protection mode of analysis." Walz v. Tax Comm'n of New York City, 397 U.S., at 696, 90 S.Ct., at 1425 (concurring opinion). Here, as in equal protection cases, we may determine the city council's object from both direct and circumstantial evidence. Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 266, 97 S.Ct. 555, 563–64, 50 L.Ed.2d 450 (1977). Relevant evidence includes, among other things, the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history, including contemporaneous statements made by members of the decisionmaking body. Id., at 267–268, 97 S.Ct., at 564–65. These objective factors bear on the question of discriminatory object. Personnel Administrator of Mass. v. Feeney, 442 U.S. 256, 279, n. 24, 99 S.Ct. 2282, 2296, n. 24, 60 L.Ed.2d 870 (1979).

Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 540 (1993). Applying these guidelines, documents reflecting NDIDA's role in the drafting and lobbying for SB 2289 may be relevant and, at this point, at least discoverable.

Also, and more particularly with respect to the particular Constitutional challenges at issue here, the Eighth Circuit does not appear to have confined itself to the official legislative record (or its functional equivalent in voter referendum cases) in terms of evidence considered (1) on the issue of legislative purpose, or (2) to call into question other evidence offered on that issue. South Dakota Farm Bureau, Inc. v. Hazeltine, 340 F.3d 583, 593–96 (8th Cir. 2003) (considering a wide range of evidence with respect to the issue of purpose arising out of a dormant Commerce Clause challenge to a state constitutional amendment passed by referendum that prohibited corporations owning farm land); Equipment Manufacturers Institute v. Janklow, 300 F.3d 842, 861 (8th Cir. 2002) (citing with the approval McDonald's Corp. v. Nelson, 822 F. Supp. 597, 608 (S.D. Iowa 1993) in which the court considered an after-the-fact affidavit by the President of the Iowa Senate in addressing whether the purpose of the legislation at issue ran afoul of the Contract Clause); SDDS, Inc. v. State of S.D., 47 F.3d 263, 270 (8th Cir. 1995) (considering "protectionist propaganda" to voters on a state referendum being challenged on dormant Commerce Clause grounds as a reason to diminish the weight of the result of the

referendum); cf. Alliance of Auto Manufacturers v. Gwadosky, 430 F.3d 30, 39 (1st Cir. 2005) ("Where, as here, a party presents circumstantial evidence of an allegedly discriminatory purpose in support of a dormant Commerce Clause argument, it is that party's responsibility to show the relationship between the proffered evidence and the challenged statute. See E. Ky. Res. v. Fiscal Court, 127 F.3d 532, 543 (6th Cir.1997). While statements by a law's private-sector proponents sometimes can shed light on its purpose, see, e.g., S.D. Farm Bureau v. Hazeltine, 340 F.3d 583, 594–95 (8th Cir. 2003), the correspondence of a single lobbyist has little (if any) probative value in demonstrating the objectives of the legislative body as a whole.").

Finally, in this case, Chief Judge Hovland has considered, among other things, (1) the history of NDIDA's involvement in the drafting of SB 2289 and its introduction, and (2) a press release issued by NDIDA about SB 2289 (because it had assisted in the drafting) in concluding the likelihood is that SB 2289 is nothing more than special interest legislation that violates the Contracts Clause. Ass'n Equip. Mfgs., 2017 WL 8791104, at **2, 8–9.

In summary, while NDIDA may ultimately prevail on an argument that any material outside of the official legislative record is not entitled to significant weight (either given its nature or the official legislative record being more relevant), it is premature at this point to foreclose the requested discovery on lack of relevancy grounds.

### 4. NDIDA's claim of First Amendment associational privilege

The court agrees that some of the documents NDIDA has withheld from discovery may legitimately be protected from discovery on First Amendment grounds. Further, the court agrees that some of the questions posed to its President and CEO during his deposition were properly

objected to either on this ground or, more generally, were irrelevant and not worthy of compelling an answer now.[4]

That being said, and without making any final ruling now, documents in which NDIDA characterizes the nature or purpose of the legislation in question or reflect its lobbying efforts are likely not privileged, either all or in part, given what NDIDA must demonstrate to support the privilege and the fact that it was the principal drafter of the legislation. Further, in some instances, this may extend to communications with its members, particularly if the identity of the members is not disclosed (or can be redacted) or the members in question have already publically weighed in on the issue.

Also, what likely is not privileged are documents that NDIDA exchanged with the sponsors of SB 2289 or other legislators, including prior to its actual introduction. Finally, there may be other documents that may call into question the statements or motivations of persons upon whom defendants rely in demonstrating what they contend were legitimate points considered by state lawmakers when they passed SB 2289.

What is set forth in NDIDA's privilege log is insufficient for the court to make a determination with respect to whether the documents withheld are in fact privileged. Further, there is no privilege log for responsive documents that predate the introduction of SB 2289. For

---

[4] Examples of questions where plaintiffs' counsel was mucking around in matters purely internal to NDIDA and likely privileged, or not probative of what is at issue in this case, included: (1) "You contacted a law firm to assist you. How did you pick that law firm?" (Doc No. at 51:8-52:23); (2) "Prior to that point in time [the introduction of the bill] did you tell any the members of NDIDA that you were drafting that legislation?" (Id. at 76:15-76:2); (3) "Did the board ask you or empower you or order you to – to have this election [to authorize pursuing legislation] before you could move forward?" (Id. at 78:24-79:5); (4) "Did any individuals condition their support of 2289 on the exclusion or inclusion of any certain terms?" (Id. at 82:14-83:9); (5) "Was there an advantage, do you think, strategically of – of NDIDA deciding to seek new legislation through 2289 as opposed to challenging the onerous, the provisions you've described as onerous in the new Case IH contract in a lawsuit?" (Id. at 169:22-170:12. Further, the following question was arguably permissible, but only as a lead in to further questions seeking the existence of possibly relevant documents: "Was specific language ever discussed at any NDIDA board meetings before you retained Mr. Allen?" (Id. at 62:6-62:10).

these reasons, the court will order that NDIDA produce to the court for *in camera* inspection all documents for which a First Amendment claim of privilege is made.[5]

## III.    ORDER

Based on the foregoing, plaintiffs motion to compel discovery (Doc. No. 85) is **GRANTED** as follows:

1.    NDIDA shall within twenty (20) days produce in response to Document Request No. 4 all documents relating to the drafting, preparation, enactment, or passage of what was introduced as Senate Bill 2289, including responsive documents that predate the introduction of SB 2289, but limited to the time period from January 1, 2016 to the date of the filing of this action on July 24, 2017, and except for any documents for which there is a legitimate claim of  privilege.   If counsel for NDIDA have any questions regarding what is meant by this order, counsel shall immediately contact chambers for a telephone conference.  No more "too cute by half" interpretations.  No more evasions whether intended or not.

2.    For any documents withheld on the basis of a claimed privilege, NDIDA's counsel shall within the same twenty-day time period produce an updated privilege log for all responsive documents being withheld based upon any claims of privilege.

3.    For any documents withheld on the basis of a claim of First Amendment privilege, NDIDA shall within the same twenty-day time period forward copies to the court under seal for *in camera* inspection.  At the same time, NDIDA may

---

[5] The undersigned considered whether it should deem NDIDA's claim of First Amendment privilege waived or forfeited based upon what has transpired, but concluded this would unfairly penalize NDIDA's members for counsel's apparent gamesmanship.

(but is not required to) file a supplement brief explaining why particular documents should be deemed privileged and plaintiffs shall have seven (7) days to file any response.

4.      NDIDA's President and CEO shall make himself available for a limited followup deposition, which shall be by telephone (unless the parties mutually agree otherwise) not to exceed one hour (exclusive of any time during which objections are interposed or discussed among counsel) after NDIDA makes a full and complete response to Document Request No. 4 and after the court makes a final ruling on what documents, if any, the court orders to be disclosed following its *in camera* inspection.

In addition, plaintiffs shall have fourteen (14) days to file a motion for fees and costs incurred in bringing the instant motion. Defendants shall have seven (7) days after being served with such motion to show cause why: (1) any fees and costs requested by plaintiffs should not be imposed, all or in part, and (2) state their position as to whether they should bear any fees and costs imposed by the court or whether the imposition of fees and costs should be borne exclusively by defendants' counsel with an order prohibiting counsel from billing the fees and costs back to the State and NDIDA. Plaintiffs shall five (5) days to file a reply.[6]

---

[6] Depending upon what is presented, the court *may* conduct an evidentiary hearing that would include an inquiry as to when defense counsel first became aware of the existence of the documents that counsel stated were discovered after the initial response to Document Request No. 4 and why the documents were not identified and disclosed earlier.

**IT IS SO ORDERED**.

Dated this 2nd day of July, 2019.

*/s/ Charles S. Miller, Jr.*
Charles S. Miller, Jr., Magistrate Judge
United States District Court
