**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| Association of Equipment Manufacturers, AGCO Corporation, CNH Industrial America LLC, Deere & Company, and Kubota Tractor Corporation, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| The Hon. Doug Burgum, Governor of the State of North Dakota, in his Official Capacity, and The Hon. Wayne Stenehjem, Attorney General of the State of North Dakota, in his Official Capacity, | ) ) ) ) ) ) ) | **Case No. 1:17-cv-151** |
| Defendants, | ) ) | |
| North Dakota Implement Dealers Association, | ) ) ) | |
| Defendant-Intervenor. | ) ) | |

---

**INTERVENOR'S SUPPLEMENTAL BRIEF**
**IN SUPPORT OF FIRST AMENDMENT PRIVILEGE**

Pursuant to this Court's Order (ecf 130, p. 13-14), Intervenor submits this supplemental brief explaining why the documents contained on its privilege log should be deemed privileged. The United States Supreme Court, most circuit courts (including the Eighth Circuit), and numerous district courts (including courts within the Eighth Circuit) have limited the compelled production of information under the First Amendment privilege when the party resisting production shows that release of the information will have a chilling effect on its associational participation and the information sought is not highly relevant to the underlying claims. That is the situation here, and respectfully, the Intervenor suggests that the information contained on its privilege log be deemed privileged.

## FIRST AMENDMENT PRIVILEGE LEGAL STANDARD

I.   The Supreme Court has applied the First Amendment Privilege to Prevent the Disclosure of Information for Over Sixty (60) Years.

In *NAACP v. Alabama*, 357 U.S. 449 (1958), the United States Supreme Court reversed an order compelling production of internal association documents.  The Court stated that "[t]his Court has recognized the vital relationship between freedom to associate and privacy in one's associations." *Id*. at 462.  And, "[i]nviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association." *Id*.  "Effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association, as this Court has more than once recognized by remarking upon the close nexus between the freedoms of speech and assembly." *Id*. at 460 (*citing De Jonge v. Oregon*, 299 U.S. 353, 364 (1937); *Thomas v. Collins,* 323 U.S. 516, 530 (1945)). Further, "[i]t is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech." *Id*. (*citing Gitlow v. New York*, 268 U.S. 652, 666 (1925); *Palko v. Connecticut*, 302 U.S. 319, 324 (1937); *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940); *Staub v. City of Baxley*, 355 U.S. 313, 321 (1958)). Finally, "it is immaterial whether the beliefs sought to be advanced by association pertain to political, economic, religious or cultural matters, and state action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny." *Id* at 460-61.

In *DeGregory v. Atty. Gen. of New Hampshire*, 383 U.S. 825 (1966), the United States Supreme Court reversed a lower court order compelling information from an associational meeting.  There, the State sought information regarding attendance at an association meeting, and

"the views expressed and ideas advocated at any such gatherings."  *Id*. at 828.  Citing the First

Amendment, the Court reversed the compelled disclosure of such information.

The First Amendment rights apply both to the freedom to petition the government as well as

to associate with other likeminded individuals to advance beliefs.  *See Roberts v. U.S. Jaycees*,

468 U.S. 609, 622 (1984).  Therein, the United States Supreme Court found that

> An individual's freedom to speak, to worship, and to petition the government for
> the redress of grievances could not be vigorously protected from interference by
> the State unless a correlative freedom to engage in group effort toward those ends
> were not also guaranteed.  *See, e.g.*, *Citizens Against Rent Control/Coalition for
> Fair Housing v. Berkeley*, 454 U.S. 290, 294 (1981).  According protection to
> collective effort on behalf of shared goals is especially important in preserving
> political and cultural diversity and in shielding dissident expression from
> suppression by the majority.  *See, e.g., Gilmore v. City of Montgomery*, 417 U.S.
> 556, 575 (1974); *Griswold v. Connecticut*, 381 U.S. 479 482–485 (1965); *NAACP
> v. Button*, 371 U.S. 415, 431 (1963); *NAACP v. Alabama ex rel. Patterson*, 357
> U.S., at 462.  <u>Consequently, we have long understood as implicit in the right to
> engage in activities protected by the First Amendment a corresponding right to
> associate with others in pursuit of a wide variety of political, social, economic,
> educational, religious, and cultural ends</u>.  *See, e.g.*, *NAACP v. Claiborne Hardware
> Co.*, 458 U.S. 886, 907–909, 932–933 (1982); *Larson v. Valente*, 456 U.S. 228,
> 244–246 (1982); *In re Primus*, 436 U.S. 412, 426 (1978); *Abood v. Detroit Board
> of Education*, 431 U.S. 209, 231 (1977).

*Id*. (emphasis added)

More recently, in *McCutcheon v. FEC*, 572 U.S. 185 (2014), the United States Supreme Court

analyzed the First Amendment in the campaign finance context.  Although a slightly different

underlying legal issue existed compared to here (challenge of a campaign finance statute versus a

contracts clause challenge), the Court reaffirmed the purpose of the First Amendment's

protections, stating that:

> The First Amendment "is designed and intended to remove governmental restraints
> from the arena of public discussion, putting the decision as to what views shall be
> voiced largely into the hands of each of us, ... in the belief that no other approach
> would comport with the premise of individual dignity and choice upon which our
> political system rests."  *Cohen v. California*, 403 U.S. 15, 24 (1971).  As relevant
> here, the First Amendment safeguards an individual's right to participate in the

> public debate through political expression and political association.  *Buckley v.*
> *Valeo*, 424 U.S. 1, 15 (1976).

*Id*. at 1448.

In the instant matter, this Court should similarly recognize the protection of individuals right to associate and engage in political activities.  Disclosure of these internal association communications, efforts, and memberships will otherwise chill First Amendment political expression, which courts in this country frown upon.

II.   Circuit Courts of Appeal Have Applied the First Amendment Privilege to Protect Against Disclosure of Association Activities.

For example, in *AFL-CIO v. FEC*, 333 F.3d 168 (D.C. Cir. 2003), the D.C. Circuit applied the First Amendment privilege to prohibit the release of confidential internal associational materials. The Court stated that "[t]he Supreme Court has long recognized that compelled disclosure of political affiliations and activities can impose just as substantial a burden on First Amendment rights as can direct regulation."[1] *Id*. at 175  (*citing, e.g., Buckley v. Valeo*, 424 U.S. 1, 64-68 (1976) (regarding disclosure of campaign contributions); *NAACP v. Alabama*, 357 U.S. 449, 462-63 (1958) (regarding disclosure of membership lists)).  There, the fight was over release of materials such as "training programs, member mobilization campaigns, polling data, and state-by-state strategies…" *Id*. at 176-77.  The AFL-CIO noted in its affidavits and the Court highlighted in its decision that disclosure of this information would "directly frustrate the organizations' ability to pursue their political goals effectively by revealing to their opponents activities, strategies and tactics [that] [the AFL-CIO] ha[s] pursued in subsequent elections and will likely follow in the future." *Id.* at 177.  The Court analyzed the affidavits submitted by the association regarding the

---

[1] This was consistent with prior opinions that held production of internal association communications "would trespass upon first amendment freedoms" and in order to do so, the State must have a "compelling" interest.  *See FEC v. Machinists*, 655 F.2d 380, 389 (D.C.Cir.1981).

potential chilling effect of disclosure and found them sufficient.  *Id*. at 178.  The Court held that "where, as here, the Commission compels public disclosure of an association's confidential internal materials, it intrudes on the privacy of association and belief guaranteed by the First Amendment as well as seriously interferes with internal group operations and effectiveness."  *Id*. at 177-78.

Similarly, in *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010), the Ninth Circuit reversed a district court's order for production of documents, which had rejected the proponent's First Amendment privilege claim.   The information at issue was "internal campaign communications concerning strategy and messaging."  *Id*. at 1153.  The Court noted from the outset that "[t]he freedom to associate with others for the common advancement of political beliefs and ideas lies at the heart of the First Amendment."  *Id*. at 1152.  The Court reiterated the Supreme Court's caselaw on the issue, for instance that "[c]ompelled disclosures concerning protected First Amendment political associations have a profound chilling effect on the exercise of political rights."  *Id.* at 1156 (*citing, e.g., Gibson v. Florida Legislative Investigation Comm.*, 372 U.S. 539, 557 (1963)).  "The right of individuals to associate for the advancement of political beliefs is fundamental."  *Id*. at 1162 (*quoting, Williams v. Rhodes*, 393 U.S. 23, 30 (1968)).  And, "implicit in the right to associate with others to advance one's shared political beliefs is the right to exchange ideas and formulate strategy and messages, and to do so in private."  *Id.*[2]

The Ninth Circuit reversed the district court's order compelling production stating that:

The district court concluded that "[i]f the…privilege identified by proponents protects anything, it is the identities of rank-and-file volunteers and similarly situated individuals," and said that "Proponents have not…identified a way in which the…privilege could protect the disclosure of campaign communications." The First Amendment privilege, however, **has never been limited** to the disclosure of identities of rank-and-file members. *See*, *e.g.*,

---

[2] "We derive this conclusion from cases that have recognized the right of associations to be free of infringements in their internal affairs. The freedom of members of a political association to deliberate internally over strategy and messaging is an incident of associational autonomy." *Perry*, 591 F.3d at 1162, n.9 (compiling cases on same).

*Degregory*, 383 U.S. at 828 (applying the privilege to "the views expressed and ideas advocated" at political party meetings); *Dole v. SEU, AFL-CIO, Local 280*, 950 F.2d 1456, 1459 (9th Cir. 1991) (applying privilege to statements "of a highly sensitive and political character" made at union membership meetings). The existence of a prima facie case turns not on the type of information sought, but on whether disclosure of the information will have a deterrent effect on the exercise of protected activities. *See NAACP v. Alabama*, 357 U.S. at 460–61; *Brock v. Local 375, Plumbers Intern. Union of America, AFL-CIO*, 860 F.2d 346, 349–50 (9th Cir. 1988). We have little difficulty concluding that disclosure of internal campaign communications can have such an effect on the exercise of protected activities.

*Id*. at 1162. (*emphasis supplied*).

The Court's decision turned, in part, on finding that the proponents of the privilege made a *prima facie* showing of "chilling" of associational rights. *Id*. at 1163. (*citation omitted*). The Court found that declarations from individuals, which stated that the individuals would be less willing to participate in the political process in the future, made a *prima facie* showing that the disclosure could have a chilling effect on protected activities. *Id*. (*citation omitted*).

Finally, the Court noted that the district court failed to apply the "heightened relevance test" to the information that implicates the First Amendment privilege. *Id.* at 1164. "The Proponents having made a prima facie showing of infringement, the evidentiary burden shifts to the plaintiffs to demonstrate a sufficient need for the discovery to counterbalance that infringement. The district court did not apply this heightened relevance test." *Id*. at 1164 (*emphasis supplied*). And, "[g]iven Proponents' prima facie showing of infringement, we must apply the First Amendment's more demanding heightened relevance standard."[3] *Id*.

The Eighth Circuit has also analyzed the issue of First Amendment privilege, and overturned a district court order compelling production of information protected thereunder.[4] *U.S.*

---

[3] *See also, Dole v. Serv. Employees Union, AFL-CIO, Local 280*, 950 F.2d 1456 (9th Cir. 1991) (refusing to order production of internal documents that reflect discussions at association meeting and finding *prima facie* case of infringement on 1st Amendment rights was established when members stated that they would no longer participate in meetings if such information were released).

[4] *See Walker v. City of Kansas City, Mo*., 911 F.2d 80, 89 (8th Cir.1990) (recognizing First Amendment privilege applies to associational activity including right "to petition the government").

*v. Citizens State Bank*, 612 F.2d 1091 (8th Cir. 1980). There, the district court enforced an Internal Revenue Service ("IRS") administrative summons against a voluntary association of individuals that opposed the tax system and operation of the IRS. *Id.* at 1093. The individuals objected to the summons on the basis of the First Amendment privilege, but the district court rejected the claim. *Id.* The Eighth Circuit reversed and remanded noting that:

> We believe the district court erred in refusing to consider appellants' First Amendment claim. In *NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), the Supreme Court recognized the important place that freedom of association holds in this country's constitutional system:
>
> > Effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association * * *. It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the "liberty" assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech. *Id.* at 460, 78 S.Ct. at 1171.
>
> The Court went on to state, moreover, that maintaining the privacy of one's associations may be necessary to guarantee freedom of association:
>
> > This Court has recognized the vital relationship between freedom to associate and privacy in one's associations. * * * Inviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs. *Id.* at 462, 78 S.Ct. at 1171-1172.
>
> In the present matter, appellants submitted to the district court three declarations by USTU members, detailing the adverse effects of the summons on USTU's organizational and fundraising activities. Similar testimony was proffered at the show-cause hearing but was deemed irrelevant by the district court. In our view, the potential for conflict with the First Amendment was raised by this evidence and the district court erred in failing to consider it.
>
> The appellants met their initial burden by making a prima facie showing of arguable First Amendment infringement; the burden then shifted to the government to make the appropriate showing of need for the material. The standard to be followed was

stated by Judge Henley in *Pollard v. Roberts*, 283 F.Supp. 248, 256-257 (D.E.D.Ark.), Aff'd, 393 U.S. 14, 89 S.Ct. 47, 21 L.Ed.2d 14 (1968)."[5]

*Id.* 1093-94. In short, the First Amendment Privilege is widely recognized and applied by Circuit courts throughout this country, including the Eighth Circuit, and NDIDA has already made the requisite *prima facie* showing to shift the burden to the manufacturers' to articulate a compelling need, which does not exist in the present matter. *See also, Pleasant v. Lovell*, 876 F.2d 787 (10th Cir. 1989) (holding that First Amendment privilege protects advocacy related to tax policy disagreements); *Austl./E. USA Shipping Conference v. United States*, 537 F.Supp. 807, 810-11 (D.C.Cir. 1982) (summarizing cases on First Amendment privilege and recognizing heightened standard of relevance that applies).

III.   District Courts, including within the Eighth Circuit, have denied Motions to Compel for Lobbying Materials based upon the First Amendment Privilege.

In *Sierra Club v. Union Elec. Co.*, No. 4:14-cv-00408-AGF, 2015 WL 9583394 (E.D. Mo. Dec. 31, 2015), the court denied several motions to compel based upon the First Amendment privilege. The court held that the First Amendment privilege is not limited to the membership lists of groups, but also extends to "requests for internal communications of and among such groups." *Id.* at *3 (*citing, Wyoming v. U.S. Dep't of Agric.*, 208 F.R.D. 449, 454-55 (D.D.C. 2002)). The court held that the declarations submitted satisfied the *prima facie* burden standard since the declarants indicated that their participation in such associational activities would be limited if the information was produced. *Id.* Finally, the court noted that the information must be more than minimally relevant to a claim. Instead, "[t]he party seeking the discovery must show that the information sought is highly relevant to the claims or defenses in the litigation – a more demanding

---

[5] The standard applied by the court therein was whether the state had demonstrated a "compelling need" for the information sought, so as to justify intrusion upon First Amendment protections.

standard of relevance than under Federal Rule of Civil Procedure 26(b)(1)."  *Id*. at *3 (*quoting Perry*, 591 F.3d at 1161).

In *Heartland Surgical Specialty Hosp., LLC v. Midwest Div.*, Inc., Case No. 05-2164-MLW-DWB, 2007 WL 852521 (D. Kan. Mar. 16, 2007), the court denied a motion to compel seeking internal communications regarding legislative and lobbying efforts on the basis of the First Amendment privilege.  There, the plaintiff sought documents related to the Kansas Hospital Association's lobbying efforts, meeting minutes, agendas, and draft legislative bills.  *Id*. at *2.  The Court analyzed Supreme Court and Circuit Court caselaw on the First Amendment privilege and held "that KHA's advocacy for modification of Kansas laws concerning general and specialty hospitals would appear to be a type of political or economic association that would also be protected by the First Amendment privilege."  *Id*. at *3.  And, "the attempt to require production of KHA's evaluations of possible legislation and legislative strategy is the type of action that would appear to interfere with KHA's internal organization and with its lobbying activities, and therefore would have a 'chilling effect' on the organization and its members."  *Id.* at *4.

A federal court also recently denied discovery requests in a Constitutional challenge to a state statute (which included the Contracts Clause) on the basis of relevance and the First Amendment privilege.  *Alliance of Auto. Mfrs., Inc. v. Jones*, Case No. 4:08cv555-MCR/CAS, 2013 WL 4838764 (N.D. Fla. Sept. 11, 2013).  There, the national trade association for automobile manufacturers sought to invalidate a state statute regulating the relationship between manufacturers and dealers, and in so doing, requested discovery from the state dealer association for items regarding "supporting, opposing, lobbying for or otherwise seeking passage of the Amendments."  *Id*. at *1.  The court noted the existence of the First Amendment privilege and the potential chilling involved in production of association information.  *Id*. at *4.  The court also

determined that the affidavits submitted by the association satisfied the *prima facie* burden to establish a potential chilling since they indicated that the individuals would be less willing to participate in the political process.  *Id*.  Finally, the court noted that the seeking party must "show a compelling need" for the discovery.  *Id.*

> The information is not relevant to the heart of the matter in dispute.  Questions concerning the constitutionality of state law are not decided upon review of campaign contributions, candidate support, a citizen's view of the law, or the like. Information which helps form legislative opinion will be relevant to a statute's purpose and intent, but such information is gleaned from legislative history as available through the public records of the State of Florida. A decision on the merits of these claims does not hinge on the opinions or activities of FADA or even the motives or opinions of the legislators passing the Amendments.

*Id*.  And, "the [Supreme] Court has not permitted probing into the political affairs of citizens, lobbyists, or other proponents of legislation."  *Id*. at *5.

Finally, in *Wyoming v. U.S. Dep't of Agric.*, 208 F.R.D. 449, 454 (D.D.C. 2002), the court denied a motion to compel for internal association communications.  "[I]t is crucial to remember that we are considering the essence of First Amendment freedoms – the freedom to protest policies to which one is opposed, and the freedom to organize, raise money, and associate with other like-minded persons so as to effectively convey the message of the protest."  *Id.* (*quoting Int'l Action Ctr. v. United States*, 207 F.R.D. 1, 2 (D.D.C. 2002)).  The court also reiterated that the information sought must meet a heightened level of relevance, and go to the "heart of the lawsuit".  *Id*. at 455. In conclusion, there is ample support in the Eighth Circuit and throughout the country for scrutinizing requests for internal association communications and activities closely and upholding the privilege for any information that might potentially "chill" First Amendment activities of organizations.

## Legal Argument

I.   The Information Is Privileged.

The Plaintiffs make no bones about the fact that they seek purely internal associational communications.  Indeed, that could be the only items sought since the publicly available matters have been available since the beginning of this case.  Those items relating to the association's discussions, communications, strategies, and the like are unquestionably privileged.  See *NAACP v. Alabama,* 357 U.S. 449 (1958) (internal association documents privileged); *DeGregory*, 383 U.S. 825 (1966) (discussions at association meeting privileged); *Perry*, 591 F.3d 1147 (9th Cir. 2010) (campaign communications and strategy documents are privileged); *Dole,* 950 F.2d 1456 (9th Cir. 1991) (minutes of associational meetings that reflect industry and political discussions are privileged); *AFL-CIO,* 333 F.3d 168 (D.C. Cir. 2003) (strategy documents are privileged); *Alliance of Auto. Mfrs., Inc.*, 2013 WL 4838764 (N.D. Fla. Sept. 11, 2013) (lobbying materials are privileged); *Wyoming*, 208 F.R.D. 449, 454 (D.D.C. 2002) (information relating to protest of policies is privileged); *Heartland Surgical*, 2007 WL 852521 (D. Kan. Mar. 16, 2007) (lobbying materials, minutes, meeting agendas, etc. are privileged).

Notably, the privileged information is not limited to the identity of the members, but extends to anything that the organization reasonably utilized in its efforts to protest policies to which it is opposed, which is the essence of the First Amendment freedom.  As the case cites above indicate, numerous courts, including the Supreme Court, have applied the privilege to the contents of the discussions at meetings, lobbying materials, and strategy discussions.  That also includes activities undertaken to petition the government and materials related thereto.  *See, e.g., AFL-CIO v. FEC*, 333 F.3d 168 (D.C. Cir. 2003) (preventing disclosure of associational materials related to political activities).

II.     The Association has made a *Prima Facie* Showing that the Release of the Information Will Chill Associational Rights.

The next step in the analysis is to determine whether the association has established a *prima facie* case of chilling.  *See, e.g., Dole*, 950 F.2d at 1459-60.  "The burden in making that *prima facie* case is light."  *Alliance of Auto. Mfrs.*, 2013 WL 4838764 at *4.

Courts have almost unanimously accepted declarations from associations (and their members), which indicate an unwillingness to continue with associational activities and/or participation in the political process in the event the information is released, as evidence of chilling.  *See Dole*, 950 F.2d at 1460 ("the Union has met its prima facie burden" through the submission of two letters that state union members will not attend further meetings if the information is released, because they believed the information to be private); *AFL-CIO*, 333 F.3d at 178 (finding that association established prima facie chilling by submission of affidavits that indicated frustration of operations); *Citizens State Bank*, 612 F.2d at 1094 (association met its burden by submitting three declarations from member that indicated the adverse effects of the disclosure); *Alliance of Auto. Mfrs.*, 2013 WL 4838764 (affidavits indicated unwillingness to participate in association and political process); *City of Greenville v. Syngenta Crop Production, Inc.*, Case Nos. 11-mc-10, 11-mc-1031, 11-mc-1032, 2011 WL 5118601 at *7 (C.D. Ill. Oct. 27, 2011) (Declarations of association members "are sufficient to make out a prima facie case for asserting the First Amendment privilege" when those declarations stated that the members "will be reluctant to communicate freely with each other if they know that the Associations may be required to divulge those conversations.")

Here, the Intervenor submitted declarations of board members and its President that they have serious concerns that their business interests would suffer if the information is released (i.e. fear of retaliation) and they would be required to seriously consider limiting involvement in the organization and political process if the information was released.  *See* ECF 87-2.  Those

declarations clearly meet the standards illustrated by the courts cited above, including the Eighth Circuit.  Accordingly, Intervenor has met its burden of proof.

III.   <u>The Information Sought is Not Highly Relevant.</u>

Once the prima facie case has been met, the burden flips to the requesting party to show a compelling need for the information.

Courts have uniformly imposed a heightened relevance test in considering whether to compel production in this area.  For example, in *Perry*, the Ninth Circuit stated that "[w]e must apply the First Amendment's more demanding heightened relevance standard", and reversed the ordered disclosure because "the district court did not apply this heightened relevance test."  591 F.3d at 1164.  Similarly, the Eighth Circuit in *Citizens Bank* applied the "compelling" test.  The Court required that the State prove a "compelling" need for the information, which exceeds the standard relevancy.  612 F.2d at 1094, citing *Pollard v. Roberts*, 283 F.Supp. 248, 256-257 (D.E.D.Ark.), Aff'd, 393 U.S. 14, 89 S.Ct. 47, 21 L.Ed.2d 14 (1968) (per curiam). See also *FEC v. Machinists Non-Partisan Political League*, 655 F.2d 380, 389 (D.C.Cir. 1981)[6]  ("Current first amendment jurisprudence makes clear that before a state or federal body can compel disclosure of information which would trespass upon first amendment freedoms, a "subordinating interest of the State" must be proferred, and it must be compelling".  *Citing NAACP v. Alabama*, 357 U.S. 449, 463); Alliance of Auto. Mfrs., Inc., 2013 WL4838764 at *4 ("The burden then shifts and the opposing party must

---

[6] The Court also highlighted the problems with such information.  "One can only imagine what the Founding Fathers would have thought of a federal bureaucracy demanding comprehensive reports on the internal workings and membership lists of peaceful political groups. It bears remembering that Elbridge Gerry, Oliver Ellsworth, Roger Sherman, Spencer Roane, Noah Webster, James Iredell, and others all sought anonymity while they conducted the most important political campaign of their lives, the campaign to ratify the federal constitution. *See* Pamphlets on the Constitution of the United States (P. Ford, ed., DeCapo Press reprint 1968); Essays on the Constitution of the United States (P. Ford, ed., reprint 1970). In fact, the Federalist Papers——"the most important work in political science that has ever been written, or is likely ever to be written, in the United States"——was published anonymously by its authors, Hamilton, Madison, and Jay. The Federalist Papers at vii (Mentor ed. 1961) (intro. by Clinton Rossiter).  *Id.* at FN 17.

'demonstrate a compelling need for the requested information.'" quoting *In re Motor Fuel Temperature Sales Practices Litigation*, 707 F.Supp.2d 1145, 1153 (D.Kan.2010).

Other Courts have used the "heart of the lawsuit" test, which again imposes a heightened standard of relevancy and questions whether the information sought goes to the heart of the lawsuit. *See Wyoming*, 208 F.R.D. 449, 455 (D.D.C. 2002)("whether the information goes to the heart of the lawsuit"); Int'l Union v. Nat'l Right to Work Legal Defense and Ed. Found., Inc.,  590 F.2d 1139, 1152 (D.C. Cir.1978) ("does the information sought go to the heart of the lawsuit.") citing See also Silkwood v. Kerr-McGee Corp., 563 F.2d 433, 437-39 (10th Cir. 1977); Baker v. F & F Investment, 470 F.2d 778, 783-84 (2d Cir. 1972), Cert. denied, 411 U.S. 966, 93 S.Ct. 2147, 36 L.Ed.2d 686 (1973); Garland v. Torre, 259 F.2d 545, 549-51 (2d Cir.), Cert. denied, 358 U.S. 910, 79 S.Ct. 237, 3 L.Ed.2d 231 (1958)

Regardless of the terminology used, the information sought here is at best, minimally relevant.  As set forth above, the information is purely internal association information that is not contained within the legislative record.  The question here with respect to the Contracts Clause is whether the North Dakota Legislature passed was concerned with a legitimate public purpose in passing SB 2289.  Questions of legislative purpose are determined based upon a review of the Legislature's actions, not outside interests such as advocates and lobbyists.

Numerous federal courts have found such information totally irrelevant including when analyzing an alleged Contracts Clause violation.  *See e.g. Alliance of Auto. Mfrs., Inc. v. Jones*, Case No. 4:08cv555-MCR/CAS, 2013 WL 4838764 (N.D. Fla. Sept. 11, 2013); *Phelps-Roper v. Heineman*, Case No. 4:09CV3268, 2014 WL 562843 (D. Neb. Feb. 11, 2014); *Utah Republican Party v. Herbert*, Case No. 2:14-cv-00876-DN-DBP, 2015 WL 1851387 (D. Utah April 22, 2015).

The Plaintiffs have already admitted this as well when telling this Court that "[n]o amount of discovery, however, can change the underlying purpose of Senate Bill 2289 as articulated by its backers at the time [citing the bill videos for SB 2289]."  ECF 74, 10-11.  And, in arguing to the Eighth Circuit that comments from lobbyists regarding legislation "are inherently unreliable sources of legislative intent and should not be afforded the weight to an actual report of a legislative committee."  Appellee brief, p. 13-14.  Thus, Plaintiffs have admitted that even if the information were relevant, which the Intervenor disputes, the need for the information is not compelling, or does not go to the heart of the lawsuit, because information from lobbyists "are inherently unreliable sources of legislative intent", and the legislative purpose was indeed contained in the legislative history "as articulated by its backers at the time."

Dated:  July 22, 2019

Respectfully submitted,

By:     /s/  Jason T. Allen
Jason T. Allen
BASS SOX MERCER
Jason T. Allen, pro hac vice
jallen@dealerlawyer.com
2822 Remington Green Circle
Tallahassee, FL 32308
Telephone (850) 878-6404


 /s/  W. Kirby Bissell
W. Kirby Bissell
BASS SOX MERCER
W. Kirby Bissell, pro hac vice
kbissell@dealerlawyer.com
2822 Remington Green Circle
Tallahassee, FL 32308
Telephone (850) 878-6404

and

By:     /s/  Benjamin E. Thomas
Benjamin E. Thomas
WOLD JOHNSON, P.C.
bthomas@woldlaw.com
State Bar ID 04713

400 Gate City Building
P.O. Box 1680
Fargo, ND 58107-1680
Telephone (701) 235-5515

Attorneys for Defendant-Intervenors.

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF will be sent electronically to the registered representatives of all parties as identified on the Notice of Electronic Filing (NEF) on July 22, 2019.


*/s/ Jason T. Allen*_____
Jason T. Allen